CHATTANOOGA SOUTHERN RAILROAD CO. *v.* MYERS.

1. The widow of an employee of a railroad company who was killed by the derailment of a locomotive upon which he was riding, and whose presence thereon was in violation of a duty devolving upon him to be elsewhere, can not recover for the homicide, even if the derailment was due to the negligence of the company. Under such circumstances it could not properly be held that the employee was free from fault directly contributing to his death.
2. That such employee and others of his class had been in the habit of riding on the locomotive, and that he, at the time of the catastrophe, was so doing with the knowledge of the conductor and engineer, and that this was in pursuance of a custom known to the officials of the company, did not render the above rule inapplicable, unless it further appeared that the deceased was on the locomotive in obedience to some order which he was bound to obey, or in the discharge of some duty which it was incumbent upon him to perform.
3. Whether the employee actually knew of a rule of the company to the effect that brakemen should not ride upon the engine unless so ordered, or, upon the assumption that he did, it had been abrogated by the company's acquiescence in its non-observance, were not, under the facts of this case, material questions.
4. One of the charges of the court excepted to was not in harmony with the principles of law hereinbefore stated as controlling this case upon the facts, and was therefore erroneous; and, under the evidence disclosed by the record, the verdict was contrary to law.

Submitted October 5,—Decided November 27, 1900.

Action for damages. Before Judge Henry. Walker superior court. May 23, 1900.

*Pritchard & Sizer* and *Lumpkin & Shattuck,* for plaintiff in error.
*Payne & Payne,* contra.

FISH, J.    Mrs. Sallie Myers obtained a verdict against the Chattanooga Southern Railroad Company for damages for the homicide of her husband.    Upon its motion for a new trial being overruled, the railroad company excepted.    The facts developed upon the trial were, that the plaintiff's husband was front or head brakeman on the defendant's freight-train; that as such his place of duty was on top of the front cars of the train, while it was running between stations; that he had no duty to perform on the engine, and while on it could not discharge any of the duties for which he was employed; that he was killed while voluntarily riding on the engine of the train upon which he was at work, while it was running between stations; that his death was due to burns and scalds from escaping steam, caused by the derailment and overturning of the engine upon which he was riding; that no one on the train was injured by the derailment except those on the engine; that three of the front cars were derailed but maintained their upright positions. There was evidence from which the jury could find that the derailment was caused by the negligence of the railroad company, that plaintiff's husband and other front brakemen had been in the habit of riding on the engine, that he, at the time of the catastrophe, was so doing with the knowledge of the conductor and engineer, and that this was in pursuance of a custom known to the officials of the company.

1.  Under such facts, was the plaintiff entitled to recover?    It is well settled that if one employed to work at a designated place voluntarily goes to some other place, where he has no duty to perform, he can not successfully insist that he is within the protection of the rule that the master must exercise ordinary care to protect him from injury.    See 3 Elliott on Railroads, § 1303.    Or, as stated in 1 Sherman & Redfield on Negligence, § 207, "A servant can not recover for any injury which he would not have suffered if he had not voluntarily left his post of duty to take a position of greater danger, even though his act may be well-meant and his object to continue serving his master."    In *Sears* v. *Railroad Co.,* 53 *Ga.* 630, plaintiff's husband was a conductor on the defendant company's freight-train, and when killed was endeavoring to uncouple a train of cars then

in motion. It was held: "It is not the duty of the conductor of a freight-train to couple and uncouple cars, except in the case of a pressing emergency, of which the jury must judge. If he is killed in performing such service, in the absence of such emergency, he is not without fault, and his widow can not recover damages from the railroad company." The case came subsequently twice to this court, and each time the ruling first made therein was reaffirmed. 59 *Ga.* 436; 61 *Ga.* 279. Another case directly in point is that of *Railroad* v. *Ray*, 70 *Ga.* 674. It was there held: "A flagman on a railroad whose place was in the rear car when in motion, but who had duties which, on occasion, might call him to other parts of the train, having brought suit against the railroad company for an injury received while he was in another portion of the train, resulting from the overturning of a stove in the car where he was, it was necessary for him to show affirmatively that, at the time he was hurt, his duty required him to be at the place where the injury occurred." See also *Railroad* v. *Chapman*, 96 *Ga.* 769; *Railroad* v. *Hallman*, 97 *Ga.* 317; *Whitton* v. *Railroad*, 106 *Ga.* 796. In the case under consideration, plaintiff's husband voluntarily left his post of duty, the top of the front cars, and got upon the locomotive, obviously the most dangerous part of a train moving forward, and a place where there was no duty whatever for him to perform, and was riding there when the derailment occurred which caused his death. Had he remained where his duty required him to be, he might not have been injured. He was "outside of duty and at fault," and consequently his widow was not, under the authorities above cited, entitled to recover damages for his homicide.

2. Nor is the rule above announced changed or rendered inapplicable because of the fact that it had been the custom, known to the officials of the defendant company, for plaintiff's husband and other front brakemen, on the defendant company's freight-trains, while running between stations, to ride on the locomotive, and that plaintiff's husband was so doing, at the time of the casualty resulting in his death, with the knowledge of the conductor and engineer of the train; it not appearing that the deceased was on the locomotive in obedience to any order which he was bound to obey, or in the discharge of any duty which it was incumbent upon him to perform. His mere permissive presence on the locomotive did not relieve him from the consequence of taking a risk which he

voluntarily chose to assume in going there; the rule being that one who enjoys a permissive privilege does so with all the concomitant perils.   3 Elliott, Railroads, §§ 1267–1303.   This is not a case of a trap or concealed danger, of which the company was bound to give notice.   The danger of riding upon the locomotive was necessarily apparent to the deceased.   In Wright *v.* Rawson, 52 Iowa, 329, s. c. 35 Am. Rep. 275, an employee in a coal-mine left his place of duty, and went to a room in the mine, according to custom known to the owner of the mine and his superintendent, to visit other employees there at work, and while there the roof fell in, by reason of the decay and insufficiency of the supports, and killed him.   It was held that the owner of the mine was not liable in damages for the homicide.   In Warden *v.* Railroad, 94 Ala. 277, plaintiff was a head brakeman on defendant's freight-train, and his duties and proper place were exactly the same as those of the husband of the plaintiff in the case in hand.   There the plaintiff was injured while riding on the cross-beam in front of the engine between stations.   He had no duty to perform on the engine.   It was held that he was guilty of such contributory negligence as barred an action for damages, and that it was proper for the trial court to so instruct the jury, as matter of law.   It was further held that plaintiff should not be allowed to prove that it was usual and customary for him and other brakemen, while on their runs, to ride on the cross-beam in front of the engine, since this would not excuse or palliate the negligence.

3. The railroad company, upon the trial, put in evidence a book of printed rules, which, among other things, provided that "no person will be permitted to ride on an engine, except the engineer, fireman, and other designated employees, in the discharge of their duties, without a written order from the proper authority," and that "brakemen must not leave their brakes while the train is in motion, nor take any other position on the train than that assigned them by the conductor."   There was no evidence that the conductor, or any one else connected with the company, ever ordered or directed plaintiff's husband to perform any duty upon the engine or to ride thereon.   Nor was there any direct evidence that he ever had a copy of the rule-book, or knew of the rules above-quoted therefrom.   Counsel for plaintiff below contend that her husband was not guilty of contributory negligence in riding upon the engine when running between stations, because he had no knowl-

edge. of the rule forbidding it, and, even if he did know of the rule, it had been abrogated by the frequent and long-continued violations of it by the head brakeman, known to and tacitly acquiesced in by the company's officials.   Whether he actually knew of the rule in question, or, upon the assumption that he did, it had become abrogated by the company's acquiescence in its non-observance, are not, in the present case, material questions.   It is certain that there was no rule or order requiring him to ride upon the locomotive, and equally certain that his place of duty was elsewhere.   He, therefore, voluntarily and without constraint of any kind left a safe place for one which was dangerous, and consequently, under every rule of law and justice, took the risk incident to so doing.   The cases (*Sloan* v. *Railway Co.*, 86 *Ga.* 15, and *Binion* v. *Railway Co.*, 111 *Ga.* 878) in which this court has dealt with what is known as "the stick rule," relating to car-couplers, are not in point.   In each of those cases it appeared that the employee was at his post of duty and undertaking to do the precise thing required of him, and in each instance the question was simply whether by failing to observe a rule requiring him to use a stick he was guilty of negligence, or whether, by reason of the abrogation of such rule, he was left free to perform this duty in any manner he chose.

4. One of the charges of the court excepted to was not in harmony with the principles of law hereinbefore stated as controlling this case upon the facts, and was, therefore, erroneous.   Under the. evidence disclosed by the record, the verdict was contrary to law.

*Judgment reversed.   All the Justices concurring.*