### 3129.　GEORGIA RAILROAD *v.* HUNTER.

The court did not err in refusing to dismiss the petition, as amended, on general demurrer.

DECIDED JUNE 7, 1911.

Action for damages; from city court of Richmond county—Judge W. F. Eve.   December 3, 1910.

*Joseph B. & Bryan Cumming, W. K. Miller, J. M. Hull Jr.,* for plaintiff in error.

*A. L. Franklin, T. F. Harrison,* contra.

POWELL, J.   The petition as amended alleged, in substance, that the plaintiff was employed as a yard switchman by the defendant company, and it was among his duties to couple cars, throw switches, and do whatever else he was directed to do by the officers and agents of the company, in order that the business of the company might be expedited; that at about 6 o'clock on the morning of August 17, 1909, the crew with which the plaintiff was working was ordered to carry over a train of 35 cars to the yard of the Charleston & Western Carolina Railway Company, formerly known as the "old Port Royal yard," in which there were several tracks. It was alleged that this was, a joint yard, used by the defendant and other companies.   The train and the crew on which the plaintiff was working pulled in on track No. 1 in this yard, and on track No. 2 there was a train of the Charleston & Western Carolina Railway Company, getting ready to go out, going south.   The cars which the plaintiff's crew had brought were to be placed on this track No. 2, and these cars were stopped on track No. 1 until the Charleston & Western Carolina train moved out; and as the Charleston & Western Carolina train moved out, the plaintiff took hold of the grab-iron on one of the cars on that train in order to go down to the switch which connected track No. 1 and track No. 2, for the purpose of throwing it, so as to let his train in with its cars.   The space between track No. 1 and track No. 2 is about 2½ or 3 feet wide.   It is the habit and custom of yard brakemen and switchmen in the employ of the defendant company to jump off and on moving trains and ride to the places where switches are to be thrown; and this was permitted by the different companies occupying the joint yard in question.   Indeed, it is alleged that the defendant company, in order to facilitate the business of handling its trains, required its switchmen to jump on and off the moving cars, in order to couple and uncouple cars more expeditiously at these places.   As a result of a flood which had occurred about a year before, this switch-yard had been considerably washed up, and piles of old scrap iron, clinkers, and rocks were left about in the yard, and, between the

tracks, and between tracks No. 1 and No. 2, near the place where the plaintiff attempted to catch hold of the grab-iron in order to mount the moving car, on the occasion in question, was a pile of clinkers, scrap iron, and rocks, about 15 inches high, and as the plaintiff caught the grab-iron, he stumbled over this obstruction and was hurt. It is alleged that the morning was dark and foggy, and that the plaintiff did not know of these obstructions in this joint yard; that he had been in the yard only a few times before, and on these previous occasions was there only when it was night-time, so that he had not seen or become acquainted with the dangerous condition in which this yard had been left, and that he had been given no warning of its condition.

The defendant excepts to the overruling of a general demurrer. We think that the petition, if it is true, sets forth a cause of action; and, of course, on general demurrer we take every allegation of fact as being true. It is not, as counsel for the plaintiff in error insist, a case where the employee of one company has gone to the yards of another company, and has there voluntarily, and for his own convenience, attempted to mount a moving train of another company, and has thus become injured. The plaintiff here alleges that the place where he was hurt was a joint yard of the defendant and of other companies, and that he had been expressly directed by his master to perform his work by jumping on a moving train when necessary to do so, and we can not say that there was such an element of rashness in his attempt to board a train moving at a rate of five miles an hour (this is the rate of speed at which it was alleged that this train was moving) 'as to put the case within the rule which makes it negligence for an employee to obey orders requiring him to expose himself rashly to obvious peril. While the plaintiff may have some difficulty in proving his allegation that he did not know the condition of this yard, still he sets forth a fair excuse for his lack of knowledge; that is, that the morning in question was dark and foggy, and that he had never been in the yard before, except on a few occasions and at night.

One important factor in the case is that the plaintiff waited until the morning of August 17, 1909, to get hurt. There may have been "method in his madness," for on the very day before (August 16, 1909) the act of the General Assembly, now embodied in the Civil Code (1910), §§ 2782-2785, was approved and became law.

Under that act, contributory negligence of the servant injured in railroad employment does not bar a recovery, unless his act amounted to a failure to exercise ordinary care. Under the law just mentioned, the doctrine of comparative negligence. is made applicable to transactions of this nature, and the jury is allowed to diminish, instead of defeat, the plaintiff's recovery, where he has been guilty of some contributory negligence.

*Judgment affirmed.* ·