### 4529.   GEORGIA RAILROAD v. HUNTER.

1. It having been settled, by a decision of this court, in this case, that the petition set forth a cause of action, it was only necessary, in order to authorize a recovery in favor of the plaintiff, that he prove his case substantially as laid in the petition.
2. Although the petition alleged that the plaintiff was injured by reason of an obstruction negligently maintained in a railroad yard jointly owned by the defendant and another railroad company, yet, if the defendant was liable even though it had no interest in or control over the yard, failure to prove joint ownership as alleged would not be a fatal variance.
3. In a suit by a railroad employee to recover damages from the railroad company for personal injuries, an allegation in the petition of freedom from fault on his part, and a plea that he failed to exercise ordinary care, puts in issue the question whether the recovery should be diminished by reason of the fact that he was guilty of contributory negligence not amounting to a failure to exercise ordinary care.
4. There was evidence to sustain the material averments of the petition in reference to the negligence of the defendant and the diligence of the plaintiff.

5. Where a servant, in the regular course of his employment, is sent by the master to perform work for the latter on the premises of a third person, the obligation of the master to inspect the premises and warn the servant of dangers therein is the same as if the master was himself the owner of the premises. This principle is applicable to a railroad company which sends one of its switchmen to the yard of a connecting carrier to make delivery of freight-cars, although such delivery is made solely in obedience to statutory requirement, and not as a matter of contractual obligation.

6 Where a servant is injured in performance of the master's business, he may, in order to acquit himself of a charge that the manner of performing the service was negligent and improper, show that the superior employees, under whose control he was, had known of and acquiesced in this manner of performing the service both by himself and by other employees of the master.

7. It is the duty of the master to furnish his servant with a safe place in which to work, but he is responsible to the servant only if he fails to exercise ordinary care in the selection and maintenance of the place. The instructions of the trial judge were not out of harmony with this rule, and, while in some respects inapplicable and slightly inaccurate, were not prejudicial to the defendant.

8. The foregoing headnotes deal with all of the material assignments of error. The evidence authorized the verdict, and no material error appears.

DECIDED FEBRUARY 11, 1913.

Action for damages; from city court of Richmond county—Judge W. F. Eve. October 16, 1912.

*Joseph B. & Bryan Cumming, James M. Hull Jr., William K. Miller*, for plaintiff in error.

*T. F. Harrison, A. L. Franklin*, contra.

POTTLE, J. The plaintiff, together with other employees of the defendant company, was engaged in making delivery of freight-cars to the Charleston & Western Carolina Railway Company, a connecting carrier. The track upon which the cars were to be delivered was owned by the Charleston & Western Carolina Railway Company, and was occupied at the time by one of its freight-trains. This train was moving out over the track, in the direction of a switch, which it was necessary for the plaintiff to throw in order that the cars which the Georgia Railroad was delivering might be placed upon this track. The plaintiff took hold of the grab-iron of one of the cars which the engine of the Charleston & Western Carolina Railway Company was pulling, and swung upon the car, in order to ride down to the switch. While he was thus riding with one foot resting upon the grease box, his other foot struck a pile of clinkers, scrap-iron, and rock, two feet high and

about as large around as the head of a barrel, and he was knocked from the train and fell under the car on the track and was severely injured. He brought suit against the Georgia Railroad to recover for the injuries thus received. It is alleged, that the yard where the cars were being delivered was the joint yard of the two companies above mentioned; that the plaintiff was injured on a dark and foggy morning, had never been in the yard before except at night, did not know of the pile of clinkers, and was exercising ordinary care, and was wholly free from fault at the time he was injured. A judgment overruling a general demurrer to the petition was affirmed by the Court of Appeals. *Georgia Railroad* v. *Hunter,* 9 *Ga. App.* 382 (71 S. E. 681). The case went to trial and resulted in a verdict in favor of the plaintiff. The defendant's motion for a new trial was overruled, and it excepted.

1. The judgment overruling the general demurrer to the petition settled the law of the case. It therefore follows that if the plaintiff proved his case substantially as laid in his petition, he is entitled to recover; and the verdict in his favor should not be set aside, unless some material error of law has been committed. That decision is conclusive that the defendant company was negligent in sending its servant to work in a yard where there was a dangerous obstruction, and that the plaintiff alleged a sufficient excuse for failing to observe the obstruction in time to avoid injury to himself.

2. The plaintiff in error recognizes, of course, the correctness of the rule above stated, but contends that the plaintiff failed in material particulars to establish the truth of the allegations of his petition. It is insisted that the evidence does not authorize a finding that the yard was jointly owned and controlled by the two companies, but that it demands a finding that the yard was the property of the Charleston & Western Carolina Railway Company, and under its sole dominion and control. As we have reached the conclusion (as will appear hereafter) that the defendant company was liable even though it had no interest in or control over the yard, we do not think that there was a fatal variance between the allegations and the proof, even assuming that the evidence did not authorize a finding that the defendant company had an interest in the yard. If the fact of joint ownership was material at all, it would simply increase the obligation of the defendant to see that the yard was in a safe condition and to warn a servant against

dangers which were not obvious to a person exercising ordinary care for his own safety. If the defendant was liable although not a joint owner of the yard, then the failure to prove joint ownership is not a matter against which it can justly complain. In the decision of this court when the case was here before there is nothing to justify the conclusion that the opinion was entertained that proof of joint ownership of the yard by the two companies was absolutely essential to the plaintiff's case. The material question in the case is whether or not the defendant was guilty of negligence in sending the plaintiff to work at a place where there was a dangerous obstruction, without warning him of the danger, and whether, if so, the plaintiff was lacking in ordinary care in failing to observe the obstruction in time to avoid injury to himself.

3. It is next insisted that the plaintiff's evidence demanded a finding that he was lacking in ordinary care, in failing to observe the obstruction which was the proximate cause of his injury. In this connection, attention is called to the following excerpt from the opinion of this court when the case was here before: "While the plaintiff may have some difficulty in proving his allegation that he did not know the condition of this yard, still he sets forth a fair excuse for his lack of knowledge; that is, that the morning in question was dark and foggy, and that he had never been in the yard before, except on a few occasions and at night." The trial judge instructed the jury that the plaintiff, having alleged his own freedom from fault, would not be entitled to recover if he was guilty of negligence which contributed in any degree to his injury. While this instruction, of course, is one which affords the defendant no cause for complaint, it does not, in our opinion, correctly state the law. Under the "employer's liability act" of 1909 (Civil Code, § 2782 et seq.), contributory negligence on the part of the plaintiff would not completely defeat his right to recover, but would simply diminish the amount of the recovery in proportion to the negligence which the jury might find attributable to him. The trial judge was of the opinion that as the plaintiff had elected to sue for a full recovery, upon the theory that he was wholly free from fault, he would not be entitled to recover at all if guilty of contributory negligence. It often happens that a plaintiff alleges more than he can prove. He frequently lays his damages in a larger sum than he can sustain by proof. He some-

times alleges an act of negligence and is unable to introduce evidence in support of it. The greater nearly always includes the less. The fact that an injured plaintiff may claim $10,000, upon the theory that he was wholly free from fault, would not prevent the jury from giving him $2,000 upon the theory that he was guilty of some negligence which contributed to the injury, but that this negligence did not amount to a failure to exercise ordinary care. In our opinion, in a case of this character the jury may diminish the recovery, if they find the plaintiff guilty of contributory negligence not amounting to a failure to exercise ordinary care, even though the plaintiff does not allege in his petition that he was guilty of such negligence, and even though the defendant does not specifically plead that he was. An allegation of freedom from fault and a plea that the plaintiff failed to exercise ordinary care put in issue also the question whether or not the plaintiff was guilty of contributory negligence not amounting to a failure to exercise ordinary care.

4. The plaintiff testified, that it was customary for the employees of the Charleston & Western Carolina Railway Company and of the Georgia Railroad to ride on each other's trains in doing their work, and that, in the yard where he was injured, this custom was known to and acquiesced in by the superior employees in charge of the work of the two companies in the yard. He further testified, that he was injured between six and half-past six o'clock in the morning; that he had put out his lantern; that the sun was rising, and that the morning was "kind of" foggy and hazy; that he looked in the direction in which he was going, and did not know of the existence of the pile of clinkers; that he had always been in the yard at night, and that the morning on which he was injured was the first time he had been in the yard in the day; that he swung himself on the moving car and rode about fifty feet, with one foot swinging down, before he struck the pile of clinkers. It is insisted that under this testimony the plaintiff was not entitled to recover, since a finding was demanded that he was lacking in ordinary care for his own safety, in failing to see the obstruction which brought about his injury. The testimony, we think, made a question for the jury. The plaintiff may have been guilty of some negligence, but it can not be said that the jury were compelled to find that he was guilty of such negligence as amounted

to a·failure to exercise ordinary care. According to his testimony, he had no reason to suspect the presence of the pile of clinkers, and he was performing his duty in the usual and ordinary way, one which was known to and acquiesced in by the superior employees in charge of the company's business in the yard. He had a right to assume that the yard would be free from defects and dangers which would cause injury to him while pursuing his work in the usual and ordinary way. Unless the danger was apparent to an ordinarily prudent person, the plaintiff ought not to be charged with such negligence as would wholly defeat his recovery, in failing to discover the pile of clinkers before or at the time he swung up on the car, or during the short interval thereafter which elapsed before the injury. It was for the jury, and not for this court, to say whether, under all the circumstances, the obstruction was so obviously dangerous that the plaintiff was lacking in ordinary care in failing to see it.

The doubt expressed by this court in reference to the plaintiff's ability to prove that he did not know the condition of the yard was resolved by the jury in the plaintiff's favor, and we can not say that there was not some evidence to support their finding in this respect, as well as their conclusion that it was negligence to permit the pile of clinkers to remain in the yard. See 4 Thomp. Neg. § 4339. The case differs entirely from that of *Lee* v. *Central Railroad Co.*, 86 *Ga.* 231 (12 S. E. 307), where a brakeman descended from a moving engine and stepped upon one clinker, about five or six inches long, lying on the margin of the railroad track. That decision is authority for the proposition that a railroad company is not bound to keep its premises free from all objects which may cause an employee to slip up or fall down, but does not support the proposition that it would not be negligent to maintain a large and dangerous obstruction, such as the one by which the plaintiff was injured. *Central Railroad* v. *DeBray*, 71 *Ga.* 406. The case of *Zipperer* v. *Seaboard Air-Line Railway*, 129 *Ga.* 387 (58 S. E. 872), is cited to sustain the defendant's contention. In that case the plaintiff was injured by striking his foot against a steel rail lying along the side of the track. It was not shown that it was not necessary for the rail to be where it was, or that it was not placed there in the proper manner and in the necessary conduct of the defendant's business.

5. ·The trial judge instructed the jury that, even if the yard where the plaintiff was injured was not jointly controlled by the defendant and the other railroad company as alleged in the petition, yet, if the defendant sent the plaintiff to work there, and he was performing his duties in the usual course of employment and by direction of his master, the defendant would be as much liable as if it had joint control over the yard with the other railroad company. It is insisted in behalf of the defendant that the law requires the Georgia Railroad to deliver these cars to the connecting carrier in the latter's yard, that there was no contractual relation between the two companies, and that the relationship was that solely imposed by law; that the Georgia Railroad had no control over the yard in question, and had no right to remove obstructions therefrom, and that the plaintiff was chargeable with notice of the legal duty of the Georgia Railroad to make delivery of the cars of freight to its connecting carrier, knew that the defendant had no control over the railroad yard, and assumed the risk of injury from defects or dangers in the yard, negligently placed or maintained there by one other than the defendant. Stated briefly, the defendant's contention is, that the duty on the part of the master to exercise ordinary care to furnish his employees with a safe place to work does not extend to the premises of another where the employer is compelled to transact his business, and in so doing sends an employee to assist in the work.

The master is bound to exercise ordinary care to furnish a safe place to work. The law imposes the absolute and non-delegable duty on the part of the master to inspect the place and see that it is free from dangers except such as are incident to the business in hand, and if not safe, to warn the servant, that he may be on equal footing with the master in reference to such dangers. The master can not excuse himself by saying that he did not know of the danger. It is his duty to know, and negligent ignorance is in law equivalent to knowledge. It is not material who owns the premises or the place where the servant is sent to work. If he is put there by the master in the course of his employment, and to perform a duty which his contract of service requires him to perform, and which he must perform or leave the master's employment, no good reason occurs to us why the same duty does not rest upon the master to furnish his servant a safe place in which to work, where

the master is using the premises of another for the conduct of his business, as where the master himself owns the premises. If the master, in the conduct of his business, employs an instrumentality owned and controlled by another, such owner is, relatively to the servant, an agent of the master, and the master is as much liable for the default of such an agent as he would.be for the default of another agent in reference to an instrumentality owned and controlled by the master. The fact that the employer has no control over the instrumentality, and is therefore unable to remedy any defects therein, does not absolve him from liability, since he ought not to set his servant to work with an appliance or upon premises which he either knows to be unsafe or which he could, by the exercise of ordinary care, have ascertained to be so. 1 Labatt, Master & Servant, § 171. It is no answer to say that the defendant was obliged to use the railroad yard for the delivery of the cars. It may be that since the statute compels such delivery to be made, the company having the actual control over the yard would not be deemed to be the agent of the delivering company so as to make the latter liable in all cases for the default of the former in failing to keep and maintain its premises in a safe condition. But the defendant was not for this reason absolved from its duty to its servant to discover the danger and to warn the servant thereof. If the servant also knew of the danger or could by the exercise of ordinary care have discovered it, the master would not be liable. But it is ordinarily for the jury to say whether the servant did have such knowledge, or was lacking in ordinary care in failing to discover the danger.

In Story v. Concord Railroad, 70 N. H. 364 (48 Atl. 288), a fireman on a locomotive was injured by reason of a defective track, over which he was running his engine in the course of his employment. The track was owned by another company, whose duty it was to keep it in repair, and this was known to the fireman. The Supreme Court of New Hampshire held that this did not relieve the fireman's employer from the duty of furnishing a safe place to work. Nor was the employer relieved of liability by reason of the fact that the fireman might have sued the owner of the track for damages. It was further decided that while the owner of the track might have been liable over to the other company using it by permission of the owner, this in no wise affected the liability of

the employer of the injured servant. The same conclusion as that reached by the Supreme Court of New Hampshire was announced by the United States Circuit Court of Appeals, in the case of Grand Trunk Railway Co. v. Tennant, 66 Fed. 922 (14 C. C. A. 190). The plaintiff in error relies upon the decision of the Supreme Court of Georgia in the case of *Dunlap* v. *Richmond & Danville Railroad Co.,* 81 *Ga.* 136 (7 S. E. 283) ; but that case is, in our opinion, clearly distinguishable from the present case. There the plaintiff, an engineer, voluntarily consented to go upon the track of another company for temporary service, and was injured by reason of the bad condition of the track. The principle upon which that decision rested sufficiently appears from the following extract from the opinion: "The employer could not by authority of the contract *order* him to go, for the duty of going was not embraced in the contract of employment. Had he objected and been discharged for it, his wages for the unexpired month would have gone on notwithstanding. We think the case is much like that of a farmer sending his hired man to plough for a neighbor a few days. If the neighbor's field is not safe, has sink-holes in it, for instance, or the plough is not adapted to the soil, and from one or both of these causes the hired man is injured, his employer, it seems to us, would not be to blame and would not be responsible, unless he knew the facts which exposed his servant to unusual peril, and concealed his knowledge or failed to communicate it." In the present case the servant was, under his contract of service, compelled to obey his master's orders; the work was in the line of his duty; he had either to obey or to lose his employment; he was in no sense a volunteer. Reliance is also placed by the plaintiff in error upon the case of *Central of Georgia Ry. Co.* v. *McClifford,* 120 *Ga.* 90 (47 S. E. 590). The verdict in that case was in favor of the employee, and the judgment overruling the defendant's motion for a new trial was affirmed. There is no ruling in that case contrary to the conclusion we have reached in this case. It is true that in the opinion the court cited the case of *Dunlap* v. *Richmond & Danville R. Co.,* supra, as authority for the proposition that where a servant is injured by reason of the defective condition of an instrumentality owned and controlled by one other than the master, and with which the servant had been directed by the master to work, "the master would not be liable, unless he knew of the defective condition of the instrumentality."

This language stated the ruling in the *Dunlap* case too broadly, as appears from the above-quoted extract from the opinion in that case.

6. Error is assigned upon the admission of the following testimony of the plaintiff: "It was customary for the employees of the Charleston and Western Carolina Railway and of the Georgia Railroad in the old Port Royal Railroad yard to ride each other's trains to do our work. Our bosses knew of it and it was acquiesced in by them. The men do ride the trains there quite frequently, and it is known by the company and acquiesced in by it." The objection was that evidence of custom could not be introduced as justification of an otherwise negligent act, or as tending to establish whether an act is or is not negligent. There was no error in the admission of this testimony. According to the evidence introduced in behalf of the plaintiff, he was in the discharge of his duty and performing it in the usual and ordinary way. It was competent to show that his superior officers, in charge of the company's business in and about the place where he was at work, knew the custom among the employees of performing the work in the manner in which the plaintiff was doing it, and acquiesced in this manner of its performance. Evidence of such a custom will not excuse an employee who is not engaged in the discharge of some duty which it is incumbent upon him to perform, unless the act was done in obedience to some order which he was bound to obey. But if he was in the discharge of a duty which he owed to the company, and his superior employees knew and acquiesced in this manner of its performance, the company will not be absolved from liability merely because there was another way in which the duty might have been performed. *Chattanooga Southern Railroad Co. v. Myers,* 112 *Ga.* 237 (37 S. E. 439); *Richmond & Danville Railroad Co. v. Watts,* 92 *Ga.* 89 (17 S. E. 983). It appears, from the evidence, that the plaintiff was engaged in the performance of his duty and he climbed upon the car for the purpose of facilitating the business of his master. This being so, it was competent for him to show that the company knew of and acquiesced in the manner in which this duty was being performed.

7. Complaint is made that the court, in charging in reference to the various duties imposed upon the master, such as the exercise of ordinary care in the selection of servants and the furnishing

of machinery such as that in general use, etc., erred in adding that the master was under an obligation to furnish the servant a safe place to work. It is insisted that it was confusing to charge the jury in reference to the selection of servants and the furnishing of machinery, since the only negligence alleged was that of a failure of the master to furnish a safe place to work. While this part of the charge was inapplicable, and the instructions should have been confined to the allegations supported by evidence, still we do not think the charge as given was so prejudicial to the defendant as to require a new trial.

Special exception is made to the instruction that it was the duty of the master to furnish the plaintiff with a safe place to work, upon the ground that the correct rule is that the duty of the master is to exercise ordinary care to provide a reasonably safe place to work. *Pelham Mfg. Co.* v. *Powell,* 6 *Ga. App.* 308 (64 S. E. 1116). The duty of the master is one thing, and the degree of care to be exercised in the performance of this duty is another thing. It is the master's duty to furnish his employees with a safe place to work. He is responsible to the servant only for a failure to use ordinary care in the selection of a reasonably safe place. The instructions to the jury in this case are not subject to the objection that the master is therein held liable to the servant in all cases where the place is unsafe, without reference to the care exercised in its selection. Considering the charge altogether, the jury must necessarily have understood that the defendant company was bound to exercise ordinary care in the selection of the place to which it sent its servants to work, and that it would be liable only in the event that it failed to exercise such care.

8. The foregoing deals with all the material assignments of error in the record. The instruction that if the yard was the joint yard of the Charleston & Western Carolina Railway Company and the Georgia Railroad, they would be jointly liable, was not prejudicial, although no question of liability on the part of the Charleston & Western Carolina Railway Company was involved in the case. The evidence was sufficient to authorize the verdict, and we find no material error in the record. *Judgment affirmed.*