## 5885. SOUTHERN RAILWAY COMPANY v. PUCKETT.

1. Since the passage by Congress of the amendment of 1910 (Act of April 5, 1910, 36 Stat. 291) to the act of April 22, 1908, c. 149, 35 Stat. 65 (U. S. Comp. Stat. 1913, §§ 8657-8665), generally known as the "Federal employer's liability act," a suit brought in a State court by any person who has a cause of action under this act can not for any reason be removed to the United States courts. *Strauser* v. *Chicago Ry. Co.,* 193 Fed. 293; *Symonds* v. *St. Louis R. Co.,* 192 Fed. 353; *Ullrich* v. *New York R. Co.,* 193 Fed. 768; *Kansas City R. Co.* v. *Cook,* 100 Ark. 467 (140 S. W. 579) ; *Lee* v. *Toledo &c. R. Co.,* 193 Fed. 685; *McChesney* v. *Ill. Cen. R. Co.,* 197 Fed. 85; *Hulac* v. *Chicago &c. R. Co.,* 194 Fed. 747.

2. The court did not err in allowing, over the defendant's objections, the amendment to the petition.

3. The petition as finally amended set forth a cause of action under the Federal employer's liability act; and the demurrers thereto, both general and special, were properly overruled.

4. The admission of certain printed rules of the defendant company was not error.

5. Under repeated rulings of this court and of the Supreme Court, an assignment of error on the ground that the court erred in refusing to grant a nonsuit will not be considered, when the case proceeds to a verdict,

and exception is taken to the refusal to grant a new trial on the ground that the verdict was not supported by evidence.

6. The instructions complained of contained no error requiring the grant of a new trial.

7. The failure to give certain instructions to the jury, in the absence of timely written requests therefor, was not error.

8. Under the pleadings and the evidence, the jury were authorized to find that the plaintiff's injury was caused by the negligence of the defendant company, and that this negligence was also the negligence of one or more of the three individual agents of the company against whom negligence was alleged in the petition.

9. Under the facts of this case, both the defendant company and the plaintiff, at the time of the infliction of the injury sued for, were engaged in interstate commerce, within the meaning of the Federal employer's liability act.

10. The verdict was authorized by the evidence, and the court did not err in overruling the motion for a new trial.

DECIDED JULY 2, 1915.

Action for damages; from city court of Atlanta—Judge Reid. June 23, 1914.

*McDaniel & Black,* for plaintiff in error.

*Atkinson & Born,* contra.

BROYLES, J. H. E. Puckett sued the Southern Railway Company for damages, based on injuries alleged to have been sustained by him in August, 1911, while at work for the defendant company in its Atlanta yard, as car-inspector. On the night on which he was injured he had been engaged in inspecting cars in an interstate train (to wit, train No. 75) which ran between Atlanta, Georgia, and Birmingham, Alabama; he had inspected some 23 to 25 cars of the train, and there remained to be inspected 12 or 14 cars which were to be placed in the same train. While waiting for these remaining cars to be placed in the train, and while making the entries and necessary data of the inspection of the cars in his inspection book, a collision between other cars of the defendant occurred in the yard near-by, and several tracks of the defendant were obstructed and blocked by the wreckage. An employee of the defendant, one O'Berry, was caught in the collision and pinned beneath a car and the engine. In obedience to the printed rules of the company the plaintiff immediately went to the scene of the wreck, to render what assistance he could, and was there instructed by an employee of the company, superior to him in authority, to get a jack to assist in raising the wrecked car, so as to extricate O'Berry and clear the tracks of the wreck. The remaining cars not placed

in train No. 75 were to have been transported over some of the tracks obstructed by the wreck, and, on account of these tracks being so obstructed, it became necessary to detour these cars for some distance over other tracks; and thereby train No. 75 was delayed about an hour. While the plaintiff was assisting in clearing up the wreck, and while carrying blocks on his shoulder for the purpose of jacking up the wrecked car and replacing it on the track, so that O'Berry could be released and the tracks freed from their obstruction, he stumbled over three large clinkers about six or eight inches in diameter, on the roadway near the track, which started him falling, and in stumbling he struck his foot against two old cross-ties overgrown with grass, which were on the roadway near one of the tracks, about five feet from the clinkers, and fell and was seriously and permanently injured.

The 8th and 9th headnotes alone need elaboration. It is earnestly argued by learned counsel for plaintiff in error that the evidence in this case did not show any actionable negligence by the railroad company. The allegations of negligence in the petition were, (1) that three large clinkers were on the road-bed, (2) that two old cross-ties, overgrown with grass, were lying alongside and near the track, and (3) that grass had grown upon the road-bed. It is the duty of the master to furnish his servant with a safe place in which to work, and he is charged with the exercise of ordinary care in the selection and maintenance of such a place. Counsel cite the case of Lee v. Central Railroad Co., 86 Ga. 231 (12 S. E. 307), where it was held that the presence of one clinker of unusual size on the margin of a railway-track where switching is done, and upon which a brakeman accidentally steps in descending from a moving engine, will not render the company liable for a personal injury thus sustained by him. In Georgia Railroad v. Hunter, 9 Ga. App. 384 (71 S. E. 681), it was held that, a cause of action was stated by a petition which alleged that the railroad company was negligent in having a pile of clinkers near its track. The ruling in Zipperer v. Seaboard Air-Line Railway, 129 Ga. 387 (58 S. E. 872), is not in conflict with the holding in the Hunter case, or with our holding in the instant case. There the defendant, a track-hand, while walking along the side of the railroad-track, struck his foot against a steel rail which lay in his path, and was injured, and the court held that he could not recover, for the rea-

son that the presence of the rail was not negligence on the part of the railroad company. In that case there was no allegation that it was not necessary for the railroad company to have the steel rail where it was, or that it was placed there in an improper manner. Moreover, in that case the rail was placed on the road-bed, near the defendant's track, and was in full view of every passer-by; it was not overgrown with and concealed by grass, as were the cross-ties in the case at bar. We are not disposed to extend the ruling of the Supreme Court in the *Lee* case, supra, so as to hold that, as a matter of law, the presence of three or more large clinkers near a track, in a railroad yard, is not negligence on the part of the railroad company. In our opinion, under the circumstances of the instant case, it was for the jury to say whether or not the presence of these large clinkers in its yard and near its tracks was negligence. We think also that it was for the jury to say whether or not the presence of the cross-ties over which the plaintiff fell, and the presence of the grass on the roadway of the defendant company, was negligence. As to the cross-ties and grass, the rules of the defendant, as introduced in evidence, specifically provide that old cross-ties be burned and not left near the tracks, and that the grass shall be kept cut along the road-bed. In our opinion, it was also for the jury to say what was the proximate cause of the plaintiff's injury,—whether it was the clinkers, over which he first stumbled, or the cross-ties, upon which he next stumbled and fell. While he testified that the clinkers started him falling, he distinctly swore also that if it had not been for the cross-ties he would not have fallen.

The petition alleges that certain individual agents of the defendant company, to wit, R. L. Cowan, Samuel Smith, and J. N. Biddy, were guilty of the negligence that caused plaintiff's injury. The defendant introduced in evidence a printed rule of the company, addressed to yardmasters, which required its yardmaster to keep the yards of the railroad clear of all obstructions, and it is insisted that if any particular agent of the defendant was negligent in this case, it was the yardmaster, against whom no negligence was alleged in the petition. The evidence showed that R. L. Cowan was track-foreman, Samuel Smith, track-supervisor, and J. N. Biddy, road-master for the defendant. The company's rules introduced in evidence, however, addressed to track-supervisors and track-foremen, require them also to see that there are no obstructions on or near

the railroad-tracks, and require that grass and weeds shall be cut, that brush, weeds, worn-out *ties*, timber, and other rubbish shall be collected and promptly burned, and that they shall not allow lumber, timber, *ties*, rails, or other material to be placed within ten feet of the main track or within seven feet of any side-track. It is insisted by the plaintiff in error that these rules addressed to track supervisors and foremen refer only to their duties upon the main line of the road and sidings between terminals, and not to the terminal yards of the company. These three named agents of the company, however, testified for the defendant, and none of them swore that such rules referred only to the main track of the railroad and to sidings, and not to the tracks and road-beds in the terminal yard; and there was testimony both for the plaintiff and the defendant that it was the duty of these particular agents of the defendant to discover and to remove all dangerous obstructions, including old cross-ties, in this railroad yard where the plaintiff's injury occurred, and that the duty to dispose of old cross-ties there was not the duty of the yardmaster. The evidence showed that the cross-ties upon which the plaintiff fell were within seven feet of one of the tracks of the defendant company, in violation of the defendant's printed rules duly introduced in evidence. So, in our opinion, under the pleadings and the evidence, the jury were authorized to find that the plaintiff's injury was caused by the negligence of the three individual employees named in the petition, and that the defendant was responsible for this negligence.

There is no contention in this case that at the time the plaintiff was injured the railroad company was not engaged in interstate commerce; the sole contention on that point being that the plaintiff was not so engaged. It is not denied that while the plaintiff was inspecting the cars in the interstate train, and while he was making entries of that inspection in his car-inspection book, he was engaged in interstate commerce, but the contention of learned counsel for the plaintiff in error is that when the collision between the other cars occurred, and when the plaintiff went to the wreck, to assist in jacking up the train to release O'Berry, he was not then so engaged. We can not agree with this contention. The plaintiff had not completed his work of inspecting the interstate cars, and while so engaged a sudden emergency, caused by the wreck, arose, and, in obedience to the rules of the company, he hastened to the

scene of the wreck to render assistance, and was then expressly instructed by an employee of the company, superior to him in authority, to assist in jacking up the wrecked car; and we think that when so engaged, under the ruling of the Supreme Court of the United States in North Carolina Railroad Co. *v.* Zachary, 232 U. S. 248 (34 Sup. Ct. 305, 58 L. ed. 591, 33 Ann. Cas. (1914C) 159), he was still engaged in interstate commerce. In that case a fireman left an interstate train, after inspecting, oiling, firing, and preparing his engine for the trip, and was injured while crossing a railroad-track in the yard of the defendant company for the purpose of going to his boarding-house on a personal errand, and it was held that at the time of the injury he was still engaged in interstate commerce. The court said: "He had not gone beyond the limits of the railroad yard when he was struck. There is nothing to indicate that this brief visit to the boarding-house was at all out of the ordinary, or was inconsistent with his duty to his employer. It seems to us clear that the man was still 'on duty' and employed in commerce notwithstanding his temporary absence from the locomotive engine."

It is insisted that the intention of the plaintiff, at the time of the injury, in jacking up the wrecked car, was to release O'Berry from his perilous position, and not to free the tracks from the obstruction so that the remaining cars to be placed in train No. 75 could be transported over the obstructed tracks. We think it immaterial that the primary object of the plaintiff may have been the rescue ·of his fellow employee, O'Berry. If the plaintiff helped to jack up the wrecked car and engine, though he did so primarily for the purpose of releasing O'Berry, it was nevertheless the first step to be taken in clearing the obstruction from the tracks so that over these tracks could be transported the remaining cars to be placed in train No. 75. In our opinion his work facilitated the interstate commerce of the railroad, and consequently he was engaged in interstate commerce when injured. It is immaterial that the tracks were not cleared in time for the remaining cars (that went into train No. 75) to be switched over them, and that these cars were detoured over other tracks.

In Pedersen *v.* Delaware &c. R. Co., 229 U. S. 146 (33 Sup. Ct. 648, 57 L. ed. 1125, 33 Ann. Cas. (1914C) 153), the defendant was operating a railroad for the transportation of passengers and

freight in interstate and intrastate commerce, and the plaintiff was an ironworker employed by the defendant to repair its bridges and tracks. At the time of his injury he and another employee, under the direction of their foreman, were carrying from a tool-car to a bridge some bolts which were to be used by them in repairing the bridge; the repairing to consist in taking out a girder and inserting a new one. The bridge could be reached only by passing over an intervening temporary bridge. Both of these bridges were being used regularly in both interstate and intrastate commerce. While the plaintiff was carrying a sack of bolts over the temporary bridge, on his way to the bridge he was to repair, he was run down and injured by an intrastate train. On this state of facts the Supreme Court of the United States (three of the Justices dissenting) held that the plaintiff was engaged in interstate commerce at the time of his injury, and entitled to the benefit of the Federal act; and in the majority opinion it was said: "Tracks and bridges are as indispensable to interstate commerce as are engines and cars; and sound economic reasons unite with settled rules of law in demanding that all of these instrumentalities be kept in repair. The security, expedition and efficiency of the commerce depends in large measure upon this being done. Indeed, the statute now before us proceeds upon the theory that the carrier is charged with the duty of exercising appropriate care to prevent or correct 'any defect or insufficiency . . in its cars, engines, appliances, machinery, track, road-bed, works, boats, wharves, or other equipment' used in interstate commerce. But independently of the statute we are of the opinion that the work of keeping such instrumentalities in a proper state of repair while thus used is so closely related to such commerce as to be in practice and in legal contemplation a part of it. The contention to the contrary proceeds upon the assumption that interstate commerce by railroad may be separated into its several elements, and the nature of each determined regardless of its relation to the others or to the business as a whole. But this is an erroneous assumption; the true test always is: Is the work in question a part of the interstate commerce in which the carrier is engaged?" "True, a track or bridge may be used in both interstate and intrastate commerce, but when it is so used it is none the less an instrumentality of the former; nor does its double use prevent the employment of those who are engaged in its repair, or in keeping it in

suitable condition for use, from being an employment in interstate commerce." The court in that case, answering the contention that the plaintiff was not at the time of his injury engaged in removing the old girder and inserting the new one, but was merely carrying to the place where work was to be done some of the materials to be used therein, said: "We think there is no merit in this. It was necessary to the repair of the bridge that the materials be at hand; the act of taking them there was a part of that work. In other words, it was a minor task which was essentially a part of the larger one, as is the case when an engineer takes his engine from the round-house to the track on which are the cars he is to haul in interstate commerce." In view of the decision in that case, the decision of the circuit court of the northern district of Georgia in Taylor v. Southern Railway Co., 178 Fed. 380 (in which it was held that a member of a railroad bridge-gang, whose duties required repair of bridges in different cities, and who, while engaged within the scope of his employment in repairing a bridge on the defendant company's line, was injured by an alleged defective scaffold, was not employed in interstate commerce), was erroneous.

We think that under the ruling in the Pedersen case, the plaintiff in the instant case, when he was engaged in helping to remove obstructions from the railroad-tracks of the defendant company, where these tracks were being constantly used to transport cars in both interstate and intrastate commerce, was clearly engaged in interstate commerce. The tracks obstructed by the wreck were "instrumentalities" used indiscriminately for both interstate and intrastate commerce. In other words, cars going into both interstate and intrastate trains were constantly switched and transported over these identical tracks; and when these tracks became obstructed, the clearing of the obstruction certainly facilitated both the interstate and intrastate commerce of the railroad. In railroad yards both "lead" and "switch" tracks are indispensable to interstate commerce. Such tracks are just as important to carry on the business of the railroad as are the main tracks, or tracks outside of the yard. These yard-tracks are necessary in making up trains and in switching, and in classifying and distributing the different cars that make up the completed interstate or intrastate train.

See also, in this connection, Central Railroad v. Colasurdo, 192 Fed. 901 (113 C. C. A. 379). The case of Illinois Central Railroad

Co. *v.* Behrens, 233 U. S. 473 (34 Sup. Ct. 646, 58 L. ed. 1051, 33 Ann. Cas. (1914C) 163), cited by counsel for the plaintiff in error, does not control the instant case, as contended. The decision in that case holds only that the plaintiff at the time of his injury must be engaged in interstate commerce.  *Judgment affirmed.*

Note. A writ of error from the Supreme Court of the United States was granted in this case.