### 11814. McKALE *v.* HINES, director-general.

So far as regards a master's obligations to his servants, he is to be treated as owner pro tempore of instrumentalities temporarily taken over by him from the owner and made a part of his own plant, and he is answerable for defects in them.

Under the evidence in this case the railway company could not be regarded as temporary owner of the compress company's electric truck left at the railway company's shed to be recharged with electricity and which was being moved by the plaintiff into the railway company's charging station for the purpose of recharging it when he received the injuries complained of. The railway company could not be held to have had constructive knowledge of the defective condition of the truck, and, in the absence of actual knowledge of that condition, was not liable for the injuries.

There being a fatal variance between the allegations of negligence and the proof, the trial judge did not err in granting a nonsuit.

DECIDED MARCH 16, 1921.

Action for damages; from city court of Savannah — Judge Freeman. July 28, 1920.

Application for certiorari was denied by the Supreme Court.

This suit was for damages on account of personal injuries received by the plaintiff while in the employ of the director-general of railroads, operating the Central of Georgia Railway, and the case came to this court on exceptions to a nonsuit. The plaintiff's petition alleges, in substance: The Central of Georgia Railway Company had an electric charging station at its terminal in Savannah where its trucks were recharged after having finished the day's work. The Atlantic Compress Company had a cotton compress adjacent to these terminals, and the com-

press company used the same sort of trucks in its business. The trucks of the Atlantic Compress Company, as well as the trucks of the defendant, were taken care of at this station, the compress company paying the director-general of railroads its proportion of the cost of the labor and supplies used in its behalf. The plaintiff was employed by the railroad company at this station, and it was his duty to recharge the trucks of both companies. There is a shed maintained by the defendant, under which, after the day's work is done, the trucks of both companies are placed for the purpose of being recharged at night, and it was the plaintiff's duty to operate the trucks from this shed to the recharging station and there recharge them. On the night on which the plaintiff was injured he undertook to operate a truck of the Atlantic Compress Company from the shed in question (a distance of about thirty feet), from where it had been left by an employee of the compress company at the close of the day's work, into the charging station. While moving the truck into the station the plaintiff was standing on the front footboard of the truck, with his back in the direction in which the truck was moving, and when he was within three or four feet of the wall of the charging station he attempted to put on the brake of the truck, but for some reason it would not work, and he was mashed between the truck and the wall of the station. The truck was also equipped with a reverse lever by which the truck could be stopped immediately without reference to the brake. The truck so injuring the plaintiff was found to be the Atlantic Compress Company's truck. The compress company's employee who had placed the truck in the shed knew that the brake appliance was out of repair, but when he had finished the day's work there was no one on the premises to whom on behalf of the defendant a report of the defect could be made.

It is alleged, that, knowing that it was the plaintiff's duty to operate for the purpose of recharging all the trucks placed in the shed, it was the defendant's duty to provide some representative to inspect the trucks so placed in the shed and to make a report of the defects and disrepair of any of said trucks, and not subject the plaintiff to injury by reason of defective trucks placed there for recharging, and to warn plaintiff of any insecurity in any of said trucks; that the defect in the truck

was known to the defendant, or in the exercise of proper care and diligence should have been known; that its defects or deficiencies were unknown to the plaintiff and could not have been discovered by the exercise of ordinary care and diligence; that it was no part of the plaintiff's duty to inspect the trucks, and he had a right to rely on the fact of this truck being in good condition, since he found it where serviceable trucks were placed for the purpose of being recharged, and the defendant, knowing of the defect and deficiency, was negligent in placing this truck where only trucks in good condition should have been placed; that this truck was used by the defendant in the business of handling freight, and the defendant used it as the defendant's own, causing it to be operated by the defendant's employees, and, irrespective of the ownership of the truck, operated and used it as the defendant's own instrumentality; and that the plaintiff, in operating it from the shed where it was placed to the recharging station, was in the discharge of his duty.

The evidence introduced to support the foregoing allegations was substantially as follows: The truck which caused the injury to the plaintiff was not used by the defendant in any of its business or in any respect, and had never been so used. It was the property of the Atlantic Compress Company, and had always been used by that company in its business, and was so used until its employee placed it in the adjacent shed for the purpose of being recharged by the plaintiff at the defedant's recharging station. There was no evidence whatever that the defendant knew of any defects or deficiencies in the truck operated by the employee of the Atlantic Compress Company when he placed it in the shed, or at any other time, or that the defendant had anything to do with placing it there. The employee of the compress company discovered in the afternoon when he placed the truck in the shed that the brakes were for some reason defective, but he did not know what was the matter with them, and did not report their condition to the defendant or to anyone else. If this employee discovered any defect in the truck it was his duty to report the defect to some officer or agent of the compress company, in order that the truck might be sent to the repair shop, about a half mile away from the charging station. He did not make a report to any-

body, as to the defect of this truck, because there was no one at the compress office to whom to make the report, and he did not go to the office of the railroad company for that purpose, because he had never made any report of the kind to it, although, if he had gone into the office, he might have found an employee of the railroad company therein. The plaintiff testified, in reference to his work, that he would go out and get one of the electric trucks and run it into the charging station, and when he got it in there he would work on the batteries, would clean them, would look to see that all of the wires were connected and in good order, would oil the trucks, and, in order to oil them, would have to go underneath them, below the platform of the trucks. "All I was hired down there for was to charge the trucks, and, if I found anything broke on them, to have it marked, 'To the shop.' I did not actually do the repairing myself. If I found anything defective or broken part of it so that it would not operate, I should chalk it to the shop, and it would be taken to the other place where they repaired trucks before they were operated again. Mr. Pharr (he was my foreman), he told us down there, he said, 'McKale, if you happen to find anything the matter with these trucks, mark them to the shop, because some careless driver is liable to leave them outside of the charging station when they need repairs.' My business was to work on the trucks, not with the trucks."

The plaintiff was operating the truck in question over smooth concrete floors on which there was a quantity of oil that had been dropped from the trucks as they were oiled each night. He was an experienced man, having been employed in this work three years. While running the truck into the charging station he stood on the front end of the truck, with his back to the wall which he was approaching. He did not undertake to put on the brake or to see if it was in working condition until within three or four feet of the wall of the charging station, and he then found that the brake would not work. He did not attempt to use the reverse lever on the truck until the wall had touched his back. His duty was to examine the truck before recharging it, and this work was performed by him sometimes out in the

shed before running the truck into the station, but generally in the station, where the light enabled him to do the work.

*Simon N. Gazan,* for plaintiff.

*H. W. Johnson,* for defendant.

HILL, J. (After stating the foregoing facts.) 1. It is well established, on principle and authority, that " a master is answerable for defects in any instrumentalities which he has temporarily taken over from the owner and made a part of his own plant. . . So far as regards his obligations to his servants he must be considered as the owner pro tempore. " 3 Labatt's Master & Servant, § 1074; 1 Sherman & Redfield on Negligence (6th ed.), § 197; *Georgia Railroad* v. *Hunter,* 12 *Ga. App.* 301 (77 S. E. 176); *Southern Bell Tel. &c. Co.* v. *Covington,* 139 *Ga.* 566 (2 *a*) (77 S. E. 382); *Central Ry. Co.* v. *McClifford,* 120 *Ga.* 90 (47 S. E. 590). In the instant case the evidence for the plaintiff clearly disproved the allegations of the petition relied upon to show that the master had taken over and used as a part of his plant the instrumentality whose defective condition was the cause of the servant's injury.

2. The railway company owned and operated electric trucks for the transportation of freight from railroad cars to steamships and vice versa. These trucks were recharged every night at the charging station of the railway company by its servant. Another corporation owned and operated electric trucks of identically the same kind as those of the railway company. By an agreement with the railway company the trucks of the other company were recharged at night at the railway company's charging station by the employee of the railway company. The trucks of the other corporation were used every day by the employees of that company, and at the end of the day were placed by them in a shed near the charging station, and afterwards operated by the employees of the railway company from that shed to the charging station to be recharged. When recharged, these trucks were taken possession of and used by the employees in the business of the company owning them. No use whatever was made of the trucks of this company by the railway company, and its possession of them was alone for the purpose of recharging them for the use of the owner company. One of these trucks which had been left for recharging had a defective brake, and while

the plaintiff was taking it into the charging station for the purpose of being recharged, he was injured because of this defect. The railway company was not the temporary owner of the defective truck, and had no qualified right of property therein, and could not be held to have had constructive knowledge of its defective condition, and, in the absence of actual knowledge of its defective condition, was not liable for the injury. *Green* v. *Babcock Lumber Co.*, 130 *Ga.* 469 (1) (60 S. E. 1062).

3. After a careful examination of the allegations of the petition and the plaintiff's evidence applicable thereto, this court is clearly of the opinion that a fatal variance exists between the allegations of negligence on which the defendant's liability is predicated and the proof, and therefore that the judgment of nonsuit was not error.

*Judgment affirmed. Jenkins, P. J., and Stephens, J., concur.*