## Dunlap *vs.* The Richmond and Danville Railroad Co.

1. A railroad company sending its locomotive engineer (employed by the month) with one of its engines to haul temporarily for another company the trains of the latter over the line of such latter company, is not responsible to the engineer for the bad condition of the track, nor for the want of adaptation of the engine to the track, it not being alleged that the employer company knew of such bad condition or want of adaptation, and concealed its information.
2. When a railroad company, chartered by a public law of this State, is in fact in open possession and use of its own line, there is no presumption that another company, who sends an engineer with an engine to haul the trains temporarily, has leased the road from the proprietary company or is otherwise using its franchises, although the other company may own a majority of the stock, vote the same at stockholders' meeetings, thus electing such directors and officers as it sees fit, and has and uses a connecting line, and pays habitually from its regular pay-car the operatives of its ally or dependent. It is the duty of an engineer running trains upon a chartered railroad to know who is in possession of the line and its franchises, or to use due diligence to ascertain, a public law of the State putting him upon notice of the ownership.

July 11, 1888.

Railroads.  Damages.  Negligence.  Master and servant.  Before Judge Van Epps.  City court of Atlanta.  December term, 1887.

' Dunlap sued the Richmond and Danville Railroad Company, alleging, in brief as follows : Defendant substantially controlled and operated the Northeastern railroad; that is, it held a majority of the stock of said company, and managed the same as part of its system by voting the majority of its stock at stockholders' meetings and elect-

ing such directors and officers as it saw fit, though the two corporations were separate bodies. In August, 1882, while employed by defendant as an engineer, plaintiff was ordered by it to run an engine over the Northeastern railroad; and while doing so, by reason of certain named defects in the track, the engine was thrown therefrom, and plaintiff was injured, without fault on his part. He was still acting as the servant of the defendant. It was the custom of defendant to send its engineers from time to time over the Northeastern railroad; and at the time in question, plaintiff went over it in pursuance of an order of defendant and as its employé. He further specifies the defects in the track and machinery, the character and extent of his injuries, etc. The day before he brought suit against the defendant, he sued the Northeastern railroad for the same injury. The case was removed to the United States court, in which a verdict for the defendant was directed and judgment against plaintiff rendered, from which he took a bill of exceptions to the Supreme Court of the United States, where it is pending. At the time of his injury, he was in the employment of the defendant; he had made a contract with it by the month, and was ordered by it to go to a point near a station of the Northeastern road to relieve another engineer. He did so, and there took charge of an engine belonging to defendant, and was injured while running it on the Northeastern road, which he never knew was a corporation separate and independent from defendant until afterwards, but believed he was working for defendant and never took employment from any other company. It was defendant's custom to pay, from its own regular pay-car, the employés who worked on the line of the Northeastern road.

It was admitted that the Northeastern Railroad Com-

pany knew of and approved plaintiff's being sent upon its road and of his running the train that injured him; but plaintiff was not informed of the understanding. The defendant demurred on the grounds that no cause of action against it was set out, and because the declaration disclosed that the cause of action against it, if any ever existed, was barred by the judgment in the United States court. The demurrer was sustained and the case dismissed, and the plaintiff excepted.

HOKE & BURTON SMITH, for plaintiff.

HOPKINS & GLENN, for defendant.

BLECKLEY, Chief Justice.

1. The engineer, being employed by the month to run trains upon the road of his employer, could have declined to go upon another road to run the trains of the company owning that road. He consented to go for temporary service, went accordingly, and was injured by reason of the bad condition of the track, and the want of adaptation of the engine (which belonged to his employer) to the track in its actual condition. It is not alleged that the employer knew either of the bad condition or the want of adaptation. For aught that appears, the parties were on equal terms as to their knowledge or information touching both these matters. Had the engineer needed information, more than he had, he should have obtained it or declined to go. The question is, whether he had a right to take for granted, as against his employer, that the track of the other company was not defective, but in a fit condition to be used under this particular engine with safety. Did the employer owe to him the diligence of seeing that this was so, before requesting him to go, and accepting his con-

sent to do so?   The employer could not by authority of
the contract *order* him to go, for the duty of going was
not embraced in the contract of employment.   Had he
objected and been discharged for it, his wages for the
unexpired month would have gone on notwithstanding.

We think the case is much like that of a farmer send-
ing his hired man to plough for a neighbor a few days.
If the neighbor's field is not safe, has sink-holes in it,
for instance, or the plough is not adapted to the soil,
and from one or both of these causes the hired man is
injured, his employer, it seems to us, would not be to
blame and would not be responsible, unless he knew
the facts which exposed his servant to unusual peril,
and concealed his knowledge or failed to communi-
cate it.

2. As to the theory that the engineer had a right to
assume that his employer had leased the line of the other
company, or was actually using it as a part of one and
the same system, because of the special facts alleged in
the declaration, all of which are indicated in the second
head-note, we think it unsound, because the two com-
panies and their lines were *prima facie* separate and dis-
tinct.   The minor or dependent company, the one upon
whose line the injury occurred, was chartered by a public
law of the State, and was in actual possession and use
of its own franchises, and for aught that appears the
actual state of things would have been made known to
the engineer had he used even slight diligence in making
inquiry.   He was not misled by any bad faith on the
part of his employer, and though he may have reasoned
logically from the premises immediately before him, the
employer is not bound by the erroneous conclusion to
which these premises, disconnected with others which
ought to have been considered, conducted his mind.   By
merely asking a question, he could most probably have

ascertained the truth. The two companies bore different names, and a public law of the State put him upon notice that they were not united by charter. As to any union by contract, that was not matter to be reasoned out from appearances, but to be ascertained by inquiry at proper sources of information, there being no representation or misrepresentation of the fact by the employer, or indeed, so far as appears, by any one.

The court did not err in sustaining the demurrer to the declaration, there being no cause of action set forth as against the defendant. What redress might be obtained from the other company is not now for consideration. It seems that question has been referred to another tribunal.

Judgment affirmed.