J. LEWIS NEAL, appellant, v. BOARD OF SUPERVISORS OF CLARKE COUNTY et al., appellees.

No. 48107.

(Reported in 53 N.W.2d 147)

724

MAY 6, 1952.

J. A. Bogen, of Osceola, for appellant.

E. K. Jones, of Osceola, for all appellees.

HAYS, J.—Plaintiff, as a taxpayer and property owner in Clarke County, Iowa, for himself and all other taxpayers similarly situated, brings this action in equity for injunctive relief. He seeks to enjoin the supervisors of Clarke County from issuing the proposed bonds, the treasurer of said county from selling the bonds, and the Board of Hospital Trustees from any further activity in connection with the Clarke County Public Hospital. The case was submitted upon an agreed statement of facts, and from a decree dismissing his petition he has appealed.

The material facts are as follows: In November 1947 a petition, under section 347.1, Code of 1946, as amended (Acts of Fifty-second General Assembly, chapter 190, section 1) was filed with the Board of Supervisors which resulted in the calling of a special election on December 9, 1947, to determine the question of establishing a County Public Hospital. Official notice thereof was published in the November 13, 20, 27 and December 4, 1947 issues of the Osceola Sentinel, a newspaper published in Clarke County. At a meeting on November 17, 1947, the supervisors selected the judges and clerks for the various precincts. Minutes of this meeting were published on December 2, 1947, in the Osceola Tribune, a newspaper published in the county. December 11, 1947, the board canvassed the vote of the December 9, 1947 election and found the proposition to have carried by a vote of 1256 to 203, which finding was recorded in the supervisors' minute book. It was never officially published. March 15, 1948, a Board of Hospital Trustees was appointed. Plans

and specifications were prepared and in the fall of 1950 a site for the hospital was procured. May 10, 1951, a hearing was had on the proposed plans and bids for the construction received. Contracts were awarded in June 1951 and actual construction work commenced about July 1, 1951. The trustees submitted their budget and request for a tax levy to be collected in 1952, and on December 19, 1951, at the request of the trustees, the supervisors authorized the issuance of bonds in the amount of $200,000, being the amount authorized at the election. This action was commenced on February 4, 1952, at which time the construction work on the hospital was approximately half completed.

Section 347.1, Code of 1946, as amended, provides for the filing of a petition asking for the establishment of a county public hospital. Section 347.4 (all Code sections refer to Code of 1946 as amended) provided for the submission thereof "at a special election * * * in the manner provided by law for submitting propositions at special elections." Chapter 345 governs the submission of questions to the voters, and section 345.6 states: "The mode of submitting questions to the people shall be the following: The whole question, including the sum desired to be raised, or the amount of tax desired to be levied, or the rate per annum, and the whole regulation, including the time of its taking effect or having operation, if it be of a nature to be set forth, and the penalty for its violation if there be one, shall be embraced in a notice of the election and shall be published once each week for at least four weeks in some newspaper published in the county. Such notice shall name the time when such question will be voted upon, and the form in which the question shall be submitted, and a copy of the question to be submitted shall be posted at each polling place during the day of election."

Section 345.7 requires that where the question submitted involves the borrowing or expenditure of money it must also contain a provision to levy a tax to pay the same. Section 345.9 states that no bonds shall have a maturity date deferred more than twenty-five years from the date thereof. Section 345.10 provides that when the amount of "the levy of one year will not pay the entire amount, the proposition and the vote must be to continue the levy at the same rate from year to year until the

amount is paid." Section 345.11 requires the board to canvass the vote and enter same in the minute book, and the proposition shall take effect and be in force thereafter. It also requires notice of such adoption to be published for the same time and in the same manner as provided for publishing the notice of election. Section 76.1 provides that "the annual levy shall be sufficient to pay the interest and approximately such portion of the principal of the bonds as will retire them in a period not exceeding twenty years from date of issue."

The official notice, as prepared and published, was as follows: "Public notice is hereby given that a special election of the County of Clarke, in the State of Iowa, will be held on the 9th day of December A.D. 1947 at which election there will be submitted to the voters of said County to be by them voted upon, the following proposition: 'Shall the County of Clarke in the State of Iowa procure a site for, erect, equip and maintain in Osceola in said County, a County Public Hospital as provided by Chapter 347 Code of Iowa 1946 as amended by Chapter 190 Acts 52nd General Assembly of Iowa and borrow money by the issuance of County Bonds, to be known as County Public Hospital Bonds, in the sum of not to exceed Two HUNDRED THOUSAND ($200,000) DOLLARS, maturing twenty years from date of issuance, bearing interest at the rate of not to exceed five (5) per cent per annum, interest payable annually or semiannually, to pay the cost thereof, to levy an annual tax in addition to all other taxes at the rate of not to exceed one mill upon the taxable property in Clarke County and to continue to levy at same rate from year to year until said bonds and interest thereon are paid and in addition to levy an annual tax in addition to all other taxes at a rate not to exceed one mill in any one year upon the taxable property in Clarke County for the improvement, maintenance and replacement of the Hospital.' "

██ I. Appellant asserts that the election is void due to a failure to list in the official notice thereof the precincts and polling places. Section 345.6, supra, makes no such requirement. The board selected as judges and clerks those who had so served at the last general election. Their names and precincts were published in the board proceedings on December 2, 1947, in the Osceola Tribune. Sections 49.1, 49.2, 49.3, 49.21 and 49.24 govern the

precincts and polling places for all elections. Section 49.23 requires that when a change from the usual polling place is made notice thereof shall be given. No change was made. Prior to the election the newspapers in the county published a complete list of all polling places. It is apparent, in view of section 49.23, the voters are to take notice of the usual polling places; if the statutory requirements are satisfied the notice need not contain other recitals. 18 Am. Jur., Elections, section 108; annotation 18 Ann. Cas. 1138; Wisconsin Gas & Elec. Co. v. Fort Atkinson, 193 Wis. 232, 213 N.W. 873, 52 A. L. R. 1033. The claim is without merit.

■ II. Appellant also claims that a failure to state in the notice the time when the proposition shall be effective nullifies the election. We think not. Section 345.11 states that when the result of the official canvass has been entered in the minute book the proposition becomes effective. In Whittaker v. County of Johnson, 10 Iowa 161, 163, we held:

"The provision that 'the time of its taking effect' shall be stated has relation to those local regulations which are to govern the action of the citizen. Each particular of the statute is not necessarily applicable to every kind of proposition, but they are to be applied according to their nature. This proposition [issuing bonds] does not require the naming [of] a specific time for its taking effect. The vote takes effect at once, and it is to be carried into effect at a convenient, practicable time."

The part of the statute under consideration may well be said to apply to propositions that are self-executing. The question here submitted is not.

■ III. It is further alleged that there is no authority to issue the bonds in question. This is based upon the thought that the notice and proposition voted upon in referring to the proposed bonds merely states "maturing twenty years from date of issuance", and is therefore contrary to the statute.

The voters are charged with knowledge of the provisions of the statutes and more particularly with section 76.1. Unless it clearly appears that the statute is being ignored, the provisions thereof, as far as applicable, are to be read into the notice. 39 Am. Jur., Notice and Notices, section 25; annotation 93 A. L. R.

362. There is nothing in the notice that is at all in conflict with section 76.1, and in fact the further reference therein to the tax to be levied shows that it is in accord therewith. If anyone, taxpayer or otherwise, has been deceived by the wording of the notice it does not appear in the record.

IV. Appellant also contends that the notice was not published for the required time and the election is therefore a nullity. Section 345.6 requires that the notice be "published once each week for at least four weeks." The purpose of giving the notice is to inform the voters of the election and the proposition to be voted upon in sufficient time to enable them to consider the issues and decide how to vote. 29 C. J. S., Elections, section 71. There is a distinct difference in whether the action assailing the election is brought prior to, or subsequent to, the holding of the same. We have held that the statutory directions as to time and manner of giving notice of an election are mandatory and will be strictly upheld where the action is brought prior thereto. If, however, the action is brought after the election has been held a substantial compliance with the statute is sufficient. Dishon v. Smith, 10 Iowa 212; Knorr v. Beardsley, 240 Iowa 828, 38 N.W.2d 236. A reason for this is that there has intervened an expression of the sovereign will, and where such will is fairly expressed it becomes the duty of the courts to sustain such expression where it can be done by a liberal construction of the laws relating thereto. State ex rel. McNeill v. Long, 178 Okla. 409, 63 P.2d 60. See also 29 C. J. S., Elections, section 81; annotation 119 A. L. R. 656, 661.

The record does not show a single voter to have been denied the right to vote because of a lack of knowledge as to when the election would be held. Even assuming that the statute calls for a publication of the notice to be made twenty-eight days prior to the time for the holding thereof, as claimed by appellant—a question which we do not determine—this notice was published for twenty-five days and is a substantial compliance with section 345.6. This rule of substantial compliance is equally applicable to Divisions I, II and III hereof.

V. Failure to publish the results of the official canvass as required by section 345.11 is also assigned as invalidating the proposed bonds. The results were not officially published as the

statute requires. They were however promptly entered in the supervisors' minute book, and, under the terms of the statute, the authority to issue the bonds became effective immediately. Wide publicity was given to the fact that the proposition had ·carried by a large vote and the public was as fully advised of the fact as it would have been by merely an official notice to that effect, probably more so. The provision is directory in nature, and the failure to so publish affects neither the authority of the supervisors to issue the bonds nor the bonds themselves. See Whittaker v. County of Johnson, supra.

VI. It is further contended that the proposition submitted on the ballot was dual in nature. The ballot submitted the proposition in the identical language of the official notice of the election with a place for a "yes" or "no" vote. The rule is well settled that when independent questions are submitted to the electors they must be done separately. Section 49.48. It is equally well settled that unless the proposition involves incongruous· purposes, which cannot naturally and reasonably be said to be a part of one general plan or scheme, there cannot be said to be a blending of the two or more, so they must be submitted separately. Mitchell v. Charles City Western Ry., 169 Iowa 237, 148 N.W. 975; Lahn v. Primghar, 225 Iowa 686, 281 N.W. 214. The propositions submitted were to procure a site, erect, equip and maintain a hospital and to levy the necessary tax to pay for the money to be borrowed for the same. There being but one object, namely, the hospital, there was but one proposition. The ballot was not dual in nature.

VII. It is claimed that by waiting for four years before attempting to issue the bonds there has been such a delay as to destroy the authority to issue under the election. The statutes place no time limit on the issuing of the bonds after they are authorized, and in the absence of such the general rule is that it rests in the sound discretion and good judgment of the issuing body as to when such shall be done, considered in the light of all the surrounding circumstances. Annotation 135 A. L. R. 771. Presumably the public officials acted for the best interests of the taxpayers and we find nothing in this record to overcome that presumption.

VIII. The trial court held appellant was guilty of laches

and also was estopped to bring the action, due to the long delay in bringing same. In view of our holding in the preceding Divisions hereof this question is immaterial, whether the trial court was right or wrong, and we find no occasion to pass thereon, as on these propositions each case must stand on its own facts.

Finding no error the decree of the trial court should be and is affirmed.—Affirmed.

All Justices concur.