Donna S. MILLWRIGHT, James Markel
Summers, and Markel Summers,
Appellants,

v.

L. W. ROMER, Appellee.

No. 66653.

Supreme Court of Iowa.

July 21, 1982.

Paul E. Pfeffer, Clinton, for appellants.

Corliss C. Baty, Maquoketa, for appellee.

McGIVERIN, Justice.

Plaintiffs Donna S. Millwright, James Markel Summers and Markel Summers appeal from summary judgment dismissing their legal malpractice action against defendant L. W. Romer. The single issue on appeal is whether plaintiffs' action is barred by the statute of limitations. We find that it is so barred and affirm trial court's summary judgment.

> In reviewing the grant or denial of summary judgment motions, we view the underlying facts contained in the pleadings and the inferences to be drawn therefrom, in the light most favorable to the party opposing the motion, and give to such party the benefit of any doubt as to the propriety of granting summary judgment. Our task on appeal is to determine only whether a genuine issue of material fact exists and whether the law was correctly applied, and to reverse the grant of summary judgment if it appears from the record there is an unresolved issue of material fact.

*Meylor v. Brown,* 281 N.W.2d 632, 634 (Iowa 1979); *Frohwein v. Haesemeyer,* 264 N.W.2d 792, 795–96 (Iowa 1978). Under this view of the facts underlying this case the following course of events appears from the record.

Defendant, now long retired, was an attorney actively engaged in the practice of law in this state on April 3, 1944. On that date defendant drafted the last will and testament of James G. Summers. Plaintiffs were beneficiaries under this will. Defendant was not employed by plaintiffs in any manner at that time, and no attorney-client relationship was ever entered into between the parties to the present action.

James G. Summers passed away on April 14, 1945. The will drafted by defendant was admitted to probate. Romer was not involved in the administration of the estate. One of the decedent's testamentary intentions had been to provide a life estate for his children, Laurel Summers and plaintiff Markel Summers, with a remainder going to their issue. This life estate and remainder were to take effect after a life estate to testator's wife terminated. To effectuate this intent a portion of the will established a trust. This portion of the will violated the rule against perpetuities and is the source of the present litigation and this appeal.

The trust creating the life estate in the testator's children with the remainder to the children's issue was opened for administration, after the death of testator's wife, on October 11, 1955. Defendant was not involved with the administration of the trust. Annual reports were filed through 1977.

On November 8, 1978, the Jackson County District Court upheld a challenge to the trust on the grounds that it violated the rule against perpetuties, section 558.68, The Code. Judgment was affirmed on December 27, 1979. *In re Summers,* 292 N.W.2d 877 (Iowa Ct.App.1979) (table). Thus, the trust providing a life estate to plaintiff Markel Summers and a remainder to his children, plaintiffs Donna S. Millwright and James Markel Summers, was terminated.

Plaintiffs brought the present legal malpractice action on February 12, 1980. Defendant raised, by a motion for summary judgment, the defense that the action was barred by the five-year statute of limitations of section 614.1(4), The Code. Trial court granted the motion for summary judgment, finding that all plaintiffs had been aware of the provisions of the will for eight or nine years and that, being charged with knowledge of the rule against perpetuities, section 614.1(4) barred their action.

Plaintiffs appealed.

■ Legal malpractice consists of the failure of an attorney "to use such skill, prudence and diligence as lawyers of ordinary skill and capacity commonly possess and exercise in the performance of the tasks which they undertake." *Neel v. Magana, Olney, Levy, Cathcart & Gelfand*, 6 Cal.3d 176, 180, 491 P.2d 421, 422–23, 98 Cal.Rptr. 837, 838–39 (1971). "When such failure proximately causes damage it gives rise to an action in tort."[1] *Id.* at 180–81, 491 P.2d at 423, 98 Cal.Rptr. at 839.

■ As a general rule a tort action for legal malpractice based on negligently drafted or executed wills accrues on the date of death of the testator. *Heyer v. Flaig*, 70 Cal.2d 223, 225, 449 P.2d 161, 162, 74 Cal.Rptr. 225, 226 (1969); *Shideler v. Dwyer*, 417 N.E.2d 281, 283 (Ind.1981); *Jaramillo v. Hood*, 93 N.M. 433, 434, 601 P.2d 66, 67 (1979); R. Mallen and V. Levit, *Legal Malpractice* § 397, at 481 (2d ed. 1981); D. Meiselman, *Attorney Malpractice: Law and Procedure* § 5.14, at 91–92 (1980); Johnston, *Legal Malpractice in Estate Planning—Perilous Times Ahead for the Practitioner*, 67 Iowa L.Rev. 629, 649 (1982). This rule, which began to develop approximately fifteen years ago, represents a substantial departure from the prior prevalent rule whereby the statute of limitations began to run when the attorney's negligent act or omission occurred. *See, e.g., Wilcox v. Plummer*, 29 U.S. (4 Pet.) 172, 183, 7 L.Ed. 821, 824 (1830); *Goldberg v. Bosworth*, 29 Misc.2d 1057, 1060, 215 N.Y.S.2d 849, 853 (Sup.Ct.1961). Professor Johnston has commented upon the transition from the rather harsh old rule to the new rule:

In the drafting and execution of wills, any mistake or error would be likely to surface only after the death of the testator, when the instrument became effective. Thus, in the usual case in which the testator died some time after the drafting error, suit generally could not be brought within the statutory period. Eventually, however, courts began to react to the obvious injustice that resulted from application of the general rule to a disappointed will or trust beneficiary.

The statute of limitations issue rarely arose in the estate planning context until the stringent privity requirement was overturned. By the late 1960's, however, the courts began to alleviate the harshness of strict application of the statute of limitations in legal malpractice. Instead of commencing to run at the time the mistake or error was committed, it was held that the statute did not begin to run until the testator's death, at which time the error had become irreversible, and was, or at least should have been, discovered by the adversely affected beneficiaries.

Johnston, 67 Iowa L.Rev. at 648–49 (footnotes omitted).

We find that the general rule, which starts the statute of limitations running on the date of testator's death, must be explicitly modified by application of the discovery rule. A similar modification occurred in *Jaramillo v. Hood*, 93 N.M. 433, 434, 601 P.2d 66, 67 (1979): "The harm or damage in this case arose at the time testatrix died.

---

1. A party can also recover as an intended third-party beneficiary of the contract between the testator and the attorney for the preparation of the will. "Since ... the main purpose of the testator in making his agreement with the attorney is to benefit the persons named in his will and this intent can be effectuated, in the event of a breach by the attorney, only by giving the beneficiaries a right of action, we should recognize, as a matter of policy, that they are entitled to recover as third-party beneficiaries." *Lucas v. Hamm*, 56 Cal.2d 583, 590, 364 P.2d 685, 689, 15 Cal.Rptr. 821, 825 (1961), *cert. denied*, 368 U.S. 987, 82 S.Ct. 603, 7 L.Ed.2d 525 (1962); *see generally Khabbaz v. Swartz*, 319 N.W.2d 279, 284–86 (Iowa 1982).

However, the third-party beneficiary contract theory "is conceptually superfluous since the crux of the action must lie in tort in any case; there can be no recovery without negligence." *Heyer v. Flaig*, 70 Cal.2d 223, 227, 449 P.2d 161, 164, 74 Cal.Rptr. 225, 228 (1969).

In the present case plaintiffs' petition seems to be based on the breach of contract theory of recovery. However, plaintiffs also alleged "negligence" and, under the notice pleading rule, Iowa R.Civ.P. 69, the tort theory of recovery was raised.

The choice of theory of recovery is important because different causes of action have differing limitations periods. *See* §§ 614.1(2), (4) and (5), The Code.

However, the cause of action did not accrue until the harm or damage was ascertainable or discoverable." Our discovery rule provides: "The limitation statute or statutes in malpractice cases do not start to run until the date of discovery, or the date when, by the exercise of reasonable care, plaintiff should have discovered the wrongful act." *Chrischilles v. Griswold*, 260 Iowa 453, 462, 150 N.W.2d 94, 100 (1967). The rule applies in legal malpractice cases. *Cameron v. Montgomery*, 225 N.W.2d 154, 155 (Iowa 1975). We apply it to the present case.

"The question in any given case is not, What did plaintiff know of the injury done him? but, What might he have known, by the use of the means of information within his reach, with the vigilance which the law requires of him?" *Chrischilles*, 260 Iowa at 462, 150 N.W.2d at 100.

■■■ We find that plaintiffs, under the vigilance which the law requires of them, should have known that the will violated the rule against perpetuities. Every citizen is assumed to know the law and is charged with knowledge of the provisions of statutes. *E.g., Cannon v. University of Chicago*, 441 U.S. 677, 696–97, 99 S.Ct. 1946, 1957–58, 60 L.Ed.2d 560, 575–76 (1979); *Anderson National Bank v. Luckett*, 321 U.S. 233, 243, 64 S.Ct. 599, 605, 88 L.Ed. 692, 703 (1944); *North Laramie Land Co. v. Hoffman*, 268 U.S. 276, 283, 45 S.Ct. 491, 494, 69 L.Ed. 953, 957 (1925); *Ketchum v. St. Louis*, 101 U.S. 306, 315–16, 25 L.Ed. 999, 1002 (1880); *Cooke v. United States*, 91 U.S. 389, 401, 23 L.Ed. 237, 244 (1875); *Barber Pure Milk Co. of Montgomery v. Alabama State Milk Control Board*, 275 Ala. 489, 494, 156 So.2d 351, 355 (1963); *Atlas Realty Co. v. House*, 123 Conn. 94, 101, 192 A. 564, 567 (1937) ("The familiar legal maxims, that every one is presumed to know the law, and that ignorance of the law excuses no one, are founded upon public policy and in necessity, and the idea back of them is that one's acts must be considered as having been done with knowledge of the law, for otherwise its evasion would be facilitated and the courts burdened with collateral inquiries into the content of men's minds."); *Dunlap*

*v. Richmond & D. R. Co.*, 81 Ga. 136, 140, 7 S.E. 283, 284 (1888); *Neal v. Board of Supervisors*, 243 Iowa 723, 728, 53 N.W.2d 147, 150 (1952); *O'Neal v. Virginia & M. Bridge Co.*, 18 Md. 1, 26 (1861); *Twiehaus v. Rosner*, 362 Mo. 949, 952, 245 S.W.2d 107, 110 (1952); *Giordano v. Mayor and Council of Borough of Dumont*, 137 N.J.L. 740, 742, 61 A.2d 245, 247 (1948); *Hagerman v. Town of Hagerman*, 19 N.M. 118, 124–25, 141 P. 613, 616 (1914); *Shealey v. American Health Ins. Co.*, 220 S.C. 79, 85–86, 66 S.E.2d 461, 464 (1951); 58 Am.Jur.2d *Notice* § 21, at 503 (1971); 66 C.J.S. *Notice* § 13, at 649 (1950); *see Reetz v. Michigan*, 188 U.S. 505, 509, 23 S.Ct. 390, 392, 47 L.Ed. 563, 566 (1903); *Whiteside v. United States*, 93 U.S. 247, 257, 23 L.Ed. 882, 885 (1876); *Art Center School v. United States*, 136 Ct.Cl. 218, 221, 142 F.Supp. 916, 918 (1956); *Board of Education v. Murphy*, 56 Ill.App.3d 981, 985, 14 Ill.Dec. 620, 622, 372 N.E.2d 899, 901 (1978); *Presbytery of Southeast Iowa v. Harris*, 226 N.W.2d 232, 242 (Iowa 1975) (for purposes of adequate notice vis-a-vis procedural due process "enactments of our state legislature and publication thereof constitute adequate notification to all concerned as to what they contain"), *cert. denied*, 423 U.S. 830, 96 S.Ct. 50, 46 L.Ed.2d 48 (1975); *Prucha v. Dept. of Motor Vehicles*, 172 Neb. 415, 420, 110 N.W.2d 75, 80 (1961); *but cf.* § 701.6, The Code 1981 ("All persons are presumed to know the law. Evidence of an accused person's ignorance or mistake as to a matter of either fact or law shall be admissible in any case where it shall tend to prove the existence or nonexistence of some element of the crime with which the person is charged").

Section 558.68, The Code, the rule against perpetuities, has been a part of the code of Iowa since 1851. It provides: "Every disposition of property is void which suspends the absolute power of controlling the same, for a longer period than during the lives of persons then in being, and twenty-one years thereafter." Since the plaintiffs are charged with knowledge of the statutory rule against perpetuities, they are deemed to have knowledge of and to have discovered the drafting defect as of the date of

testator's death. Thus, the statute of limitations began to run on that date because plaintiffs should have known the contents of the will, that the will drafted by defendant was in violation of the statutory rule against perpetuities and that certain bequests were therefore void. Under this interpretation, the last day plaintiff Markel Summers could have brought his action was April 14, 1950. The record shows he was born in 1910. However, the children of Markel Summers, Donna S. Millwright born in 1942 and James Markel Summers born in 1938, were minors at the date of testator's death. Under section 614.8, The Code 1981, and its predecessors, statutes of limitations are extended in favor of minors until one year after they reach the age of majority. Thus, James and Donna could have brought their actions after 1950, but the applicable statutes of limitations would have run, as to them, well before the present action was brought in 1980.

■ None of the reasons for application of the discovery rule to legal malpractice actions support an exception to the presumption of knowledge of the law in this present action by beneficiaries based upon a negligently drafted will. One reason underlying the discovery rule in legal malpractice actions is that a client has a right to rely upon the superior skill and knowledge of his attorney. *Neel*, 6 Cal.3d at 179, 491 P.2d at 422, 98 Cal.Rptr. at 838; *see Baines v. Blenderman*, 223 N.W.2d 199, 202 (Iowa 1974) (reliance on physician in medical malpractice). That reason does not apply here because defendant was never plaintiffs' attorney. He had no part in the administration of decedent's estate or trust, and had no prior or subsequent legal relationship with plaintiffs.

A second reason underlying the discovery rule in legal malpractice is that the absence of such a rule denigrates the duty of the attorney to make full and fair disclosure to the client. *Neel*, 6 Cal.3d at 179, 491 P.2d at 422, 98 Cal.Rptr. at 838. There is no attorney-client relationship here, and no such duty of disclosure.

■ A final reason for the rule takes into account two additional aspects of the client-attorney relationship. Even though no such relationship existed in the present case, it is clear that these two constituent elements of the relationship, even if they were applied to the facts of this case, would not justify an exception to the presumption of knowledge of the law. First, the laymen had an ability to detect the mistake or misapplication in the present case. *Neel, id.*, 491 P.2d at 428, 98 Cal.Rptr. at 844. The executor of the estate was represented by an attorney. This person could have provided the notice that the will violated section 558.68. Second, the plaintiffs had an opportunity to see the defect. *Neel, id.*, 491 P.2d at 428, 98 Cal.Rptr. at 844. The use of a new attorney for probate was an opportunity for discovery. *Jaramillo v. Hood*, 93 N.M. at 434, 601 P.2d at 67. The opportunity lasted for at least five years.

Plaintiffs have not carried their burden to plead and establish, as a genuine issue of fact, an exception to the normal limitations period which ended well before 1980. *Brown v. Ellison*, 304 N.W.2d 197, 200 (Iowa 1981). The five-year limitation period of section 614.1(4) applies to this legal malpractice action brought by the beneficiaries of a negligently drafted will. The statute began to run on the date of testator's death because plaintiffs were charged with knowledge of the statutory rule against perpetuities. The period of limitations has run as to all plaintiffs. Trial court's summary judgment dismissing the petition is therefore affirmed.

AFFIRMED.

All Justices concur except HARRIS, LARSON, and McCORMICK, JJ., who dissent.

HARRIS, Justice (dissenting).

In all respect, the basis for the majority holding escapes me.

Question: How do we bar a claim that a lawyer was negligent for misunderstanding the rule against perpetuities?

Answer: By pretending lay persons understand it.

Plaintiffs are not lawyers; the defendant is. Although plaintiffs would doubtless have some difficulty prevailing on the merits, I would trust a jury to resolve their claim. I would reverse the trial court.

No one should be astonished when a lawyer runs afoul the rule against perpetuities. Notwithstanding its existence for centuries it is inordinately complex. In all jurisdictions generations of lawyers have stubbed professional toes on some protruding ramification of the rule. Indeed the complexity of the rule led one jurisdiction to hold that it could form no basis for a legal malpractice suit, inasmuch as misunderstandings of the rule by lawyers are so commonplace. *Lucas v. Hamm*, 56 Cal.2d 583, 591, 364 P.2d 685, 690, 15 Cal.Rptr. 821, 826 (1961). An Iowa jury might reach the same conclusion. But a lay person should not be barred from prosecuting a claim based on the rule in a suit against, of all persons, a lawyer.

Although this case is unusual it is not particularly complicated. Our rules on tort claims for malpractice are well settled and, as the majority notes, apply as much to lawyers as to other professions. The discovery rule, also recited by the majority, is deeply woven into the fabric of our law. We should yield to the established rules and give plaintiffs their day in court. The question of when, if ever, plaintiffs should be charged with knowledge of the rule so as to bar their claim under the statute of limitations, should be a fact question for the jury to decide. It is not a question which should be decided by us as a matter of law. The trial court should be reversed.

McCORMICK and LARSON, JJ., join this dissent.

LARSON, Justice (dissenting).

I join Justice Harris's dissent, with these additional views. The discovery rule was designed to ameliorate the harsh results of charging a claimant with knowledge of the facts giving rise to his claim despite the fact he was unaware of them and would not have discovered them in the exercise of reasonable care.

Now the court, while giving lip service to the discovery rule, nevertheless applies an artificial presumption that every person knows the law and concludes the plaintiffs had knowledge of the legal defect in the trust even though there is substantial evidence they in fact had no such knowledge. This stands the discovery rule on its head. The date of the plaintiffs' knowledge of the legal defect, or when they should have been aware of it, is a disputed fact issue, inappropriate for summary judgment.