Martin SCHREINER, Appellant,

v.

Robert J. SCOVILLE, Appellee.

86–521.

Supreme Court of Iowa.

Aug. 19, 1987.

J. Michael Dull of Dull, Murphy & Dull, LeMars, for appellant.

David M. Woodke of Gross, Welch, Vinardi, Kauffman & Day, P.C., Omaha, Neb., for appellee.

Considered by REYNOLDSON, C.J., and HARRIS, LARSON, LAVORATO, and NEUMAN, JJ.

REYNOLDSON, Chief Justice.

Martin Schreiner, a named beneficiary in Mary Eickholt's will and accompanying codicil, filed this action against lawyer Robert Scoville, alleging his negligence caused Eickholt's testamentary intent as expressed in those instruments to be frustrated and a bequest to Schreiner to fail. District court granted Scoville's motion to dismiss for failure to state a claim on which any relief could be granted, concluding Scoville owed Schreiner no duty of due care under the circumstances alleged. *See* Iowa R.Civ.P. 104(b). We reverse and remand for further proceedings.

With the case in this posture we review Schreiner's petition in its most favorable light, resolving all doubts and ambiguities in his favor. *Weber v. Madison*, 251 N.W.2d 523, 525 (Iowa 1977). We will affirm only if Schreiner has failed to state a claim upon which any relief could be granted under any state of supporting facts that could be established. *Murphy v. First Nat. Bank of Chicago*, 228 N.W.2d 372, 375 (Iowa 1975). With these principles before us, we set out the allegations of the dismissed petition.

December 3, 1980, Scoville prepared and witnessed Mary Eickholt's will. Paragraph one of this instrument devised to Martin Schreiner one-half of her interest in a certain piece of real estate located in Plymouth County, Iowa. Eickholt also left Schreiner a one-half interest in the residue of her estate.

Seven months later, June 23, 1981, Scoville prepared and witnessed a codicil to Eickholt's will. In the codicil Eickholt expressly reaffirmed her intention to leave Schreiner one-half of her interest in the Plymouth County real estate. Eickholt, however, removed Schreiner as a beneficiary of her residuary estate, leaving this residue to four nephews.

Within a month, on July 22, 1981, Scoville brought an action for partition by sale of the real estate in which Schreiner was to receive an interest. This petition arose out of Scoville's ongoing representation of Eickholt, commencing in December 1980, in the estate of Frank Ruba, from whom Eickholt derived her interest in the land. In March 1982, the property was sold at partition sale.[1] Following the sale, Eickholt received cash in proportion to her interest in the property.

Eickholt died in December 1982. Her will and codicil were then admitted into probate.

Schreiner subsequently filed a petition to construe Eickholt's will and codicil. Specifically, Schreiner requested the court determine who should receive the proceeds from the predeath sale of the property devised to him. District court found Eickholt's devise to Schreiner had adeemed when her interest in the property was transformed from an interest in real property into an interest in personal property. Because Eickholt made no express bequest of this personal property, the money generated by the sale passed to Eickholt's four nephews through the residuary clause contained in the codicil to her will.

---

1. A court of appeals decision in the case Schreiner brought to construe Eickholt's will and codicil states the farm was sold at partition sale in March 1981. *See In re Eickholt*, 365 N.W.2d 44, 46 (Iowa App.1985). This apparently is a typographical error. A copy of the partition petition, attached to the petition in this case, discloses it was not filed until July 22, 1981.

Schreiner alleges that as part of the process leading to that decision, Scoville appeared and testified that at the time the codicil was drafted Eickholt intended Schreiner to receive one-half of her interest in the real estate later sold at partition, and that he did not explain to Eickholt the significance of ademption. The petition further alleges the codicil contained no provision to distribute the proceeds from the sale of Eickholt's farm to the intended beneficiaries of the farm.

Because Schreiner's testamentary interest in the property adeemed at partition and because the residue of Eickholt's estate passed to individuals other than Schreiner, the latter received nothing from Eickholt's estate. On appeal, the court of appeals affirmed district court's judgment. *In re Eickholt*, 365 N.W.2d 44 (Iowa App. 1985).

December 6, 1985, Schreiner filed the present action against Scoville. Schreiner asserted Scoville was negligent in failing to properly advise Eickholt. Schreiner claimed alternately that Scoville negligently failed to draft Eickholt's testamentary instruments in a way that protected and fulfilled her true testamentary intent. Schreiner contended Scoville's negligence proximately caused his loss of an interest in the proceeds of the property as well as other damage.

In dismissing Schreiner's petition for failure to state a claim on which relief could be granted, district court focused primarily on the fact no attorney-client relationship or other special relationship existed between Scoville and Schreiner.

Schreiner's challenge to district court's judgment presents two interrelated questions. First, can a lawyer under any circumstances be liable to a disappointed nonclient beneficiary? Second, if liability may be imposed in some situations, has Schreiner alleged sufficient facts to fall within this general category and avoid dismissal for failure to state a claim? We answer both questions in the affirmative; we reverse district court and remand for further proceedings.

I. Generally, absent special circumstances such as fraud or collusion, an attorney is liable for professional malpractice only to a client. *Brody v. Ruby*, 267 N.W.2d 902, 906 (Iowa 1978). This privity requirement flows from the Supreme Court case of *National Savings Bank v. Ward*, 100 U.S. (10 Otto) 195, 200, 203, 25 L.Ed. 621, 623, 624 (1880), and is premised upon two basic concerns. First, absent a requirement of privity, parties to a contract for legal services could easily lose control over their agreement. Second, imposing a duty to the general public upon lawyers would expose lawyers to a virtually unlimited potential for liability. *Brody*, 267 N.W.2d at 906.

Recently several states have reaffirmed their approval of the privity requirement. *See, e.g., Lilyhorn v. Dier*, 214 Neb. 728, 730, 335 N.W.2d 554, 555 (1983); *Rossi v. Boehner*, 116 A.D.2d 636, 637, 498 N.Y. S.2d 318, 319 (N.Y.App.Div.1986); *Berry v. Dodson, Nunley & Taylor, P.C.*, 717 S.W.2d 716, 718–19 (Tex.App.1986), *vacated on other grounds*, 729 S.W.2d 690 (Tex. 1987). The trend in recent years, however, has been to allow some relaxation of the privity standard in severely limited situations.

This trend is particularly evident in cases involving claims against lawyers accused of preparing testamentary instruments that are invalid or in some other way frustrate the stated testamentary intent of the deceased. *See, e.g., Lucas v. Hamm*, 56 Cal.2d 583, 364 P.2d 685, 15 Cal.Rptr. 821 (1961), *cert. denied*, 368 U.S. 987, 82 S.Ct. 603, 7 L.Ed.2d 525 (1962); *Biakanja v. Irving*, 49 Cal.2d 647, 320 P.2d 16 (1958).

In such cases, intended beneficiaries harmed by the lawyer's negligence have been allowed to maintain a cause of action against a drafting lawyer even though no attorney-client relationship (*i.e.*, privity) existed between them. *See, e.g., Stowe v. Smith*, 184 Conn. 194, 196–200, 441 A.2d 81, 82–84 (1981); *Needham v. Hamilton*, 459 A.2d 1060, 1062–63 (D.C.1983); *Ogle v. Fuiten*, 102 Ill.2d 356, 360–64, 80 Ill.Dec. 772, 774–75, 466 N.E.2d 224, 226–27 (1984); *Guy v. Liederbach*, 501 Pa. 47, 58–63, 459

A.2d 744, 750–53 (1983); *Persche v. Jones*, 387 N.W.2d 32, 35–36 (S.D.1986); *Auric v. Continental Casualty Co.*, 111 Wis.2d 507, 509, 331 N.W.2d 325, 327 (1983).

Courts recognizing such claims often have been willing to recognize a cause of action when the testamentary instruments themselves are rendered invalid in whole or in part as a direct result of attorney error. Significant in this regard is this observation by the California Supreme Court in *Lucas*:

> [O]ne of the main purposes which the transaction between defendant and the testator intended to accomplish was to provide for the transfer of property to plaintiffs; the damage to plaintiffs in the event of invalidity of the bequest was clearly foreseeable; it became certain, upon the death of the testator without change of the will, that plaintiffs would have received the intended benefits but for the asserted negligence of defendant; and if persons such as plaintiffs are not permitted to recover for the loss resulting from negligence of the draftsman, no one would be able to do so, and the policy of preventing future harm would be impaired.

*Lucas*, 56 Cal.2d at 589, 364 P.2d at 688, 15 Cal.Rptr. at 824. *See also Heyer v. Flaig*, 70 Cal.2d 223, 228–29, 449 P.2d 161, 164–65, 74 Cal.Rptr. 225, 228–29 (1969); *Licata v. Spector*, 26 Conn.Supp. 378, 379–80, 225 A.2d 28, 29–30 (1966); *Persche*, 387 N.W.2d at 36 n. 1; *Auric*, 111 Wis.2d at 513–14, 331 N.W.2d at 328–29.

The inquiry frequently focuses on who should be allowed to prosecute a cause of action against a lawyer. Because no privity exists, courts extending lawyer liability to nonclient-third parties generally have limited a lawyer's liability to the direct, intended, and specifically identifiable beneficiaries of the testator's testamentary disposition. *See, e.g., Needham*, 459 A.2d at 1062–63; *Marker v. Greenberg*, 313 N.W.2d 4, 5 (Minn.1981); *Guy*, 501 Pa. at 62–63, 459 A.2d at 752–53.

This limitation, which focuses on and seeks to protect the express intent of the testator, severely limits the number of individuals or entities to which a lawyer is potentially liable and poses no substantial threat to the professional relationship between the testator and the lawyer. *Needham*, 459 A.2d at 1062–63. At the same time, however, because the testator's estate generally will have little incentive to challenge the lawyer's action, *Heyer*, 70 Cal.2d at 228, 449 P.2d at 164–65, 74 Cal. Rptr. at 228–29, the potential for liability likely motivates the lawyer to draft and execute testamentary instruments with great care, *Auric*, 111 Wis.2d at 513–14, 331 N.W.2d at 329. Further, if no cause of action could be maintained, the very purpose for which the lawyer was retained (*i.e.*, disposition of the testator's estate in accord with his or her wishes) would be frustrated without remedy. *See Biakanja*, 49 Cal.2d at 650–51, 320 P.2d at 19; *Needham*, 459 A.2d at 1062.

In light of these various policy considerations, we conclude a lawyer owes a duty of care to the direct, intended, and specifically identifiable beneficiaries of the testator as expressed in the testator's testamentary instruments. The thrust of any action brought by such an individual, whether couched in terms of contract or tort, *Stowe*, 184 Conn. at 199, 441 A.2d at 84; *Flaherty v. Weinberg*, 303 Md. 116, 134, 492 A.2d 618, 627 (1985), necessarily will center on the existence and breach of this duty of care, *see Heyer*, 70 Cal.2d at 227, 449 P.2d at 164, 74 Cal.Rptr. at 228 ("[T]he crux of the action must lie in tort ... [since] there can be no recovery without negligence."); *Millwright v. Romer*, 322 N.W.2d 30, 32 n. 1 (Iowa 1982).

The recognition of this duty is consistent with the current state of Iowa law in the area of professional liability to nonclient-third parties. *See Millwright*, 322 N.W.2d at 32 & n. 1; *Larsen v. United Fed. Sav. & Loan Ass'n*, 300 N.W.2d 281, 286–87 (Iowa 1981); *Brody v. Ruby*, 267 N.W.2d 902, 906–07 (Iowa 1978); *Ryan v. Kanne*, 170 N.W.2d 395, 401–03 (Iowa 1969). Unlike cases such as *Larsen* and *Ryan*, in which an element of reliance established a proximate cause link between defendant's negligence and plaintiff's harm, when a lawyer's

negligence frustrates the testator's intent any injury inflicted on the intended beneficiary is proximately caused by the lawyer's negligence. Thus, no evidence of reliance need (or in most cases reasonably could) be shown by the injured beneficiary.

The Iowa case most clearly anticipating a recognition of a cause of action by an injured beneficiary is *Millwright v. Romer.* In *Millwright,* the testator's intent was frustrated because the lawyer prepared the will so that it violated the rule against perpetuities. *See Millwright,* 322 N.W.2d at 31. Although actions brought by the disappointed beneficiaries were eventually dismissed on statute of limitations grounds, we strongly indicated that had the action been timely commenced a cause of action sounding in tort or contract would have been recognized. *Id.* at 32 & n. 1. We today expressly recognize these causes of action.

■ While our prior discussion limits the potential class of plaintiffs to the direct, intended, and identifiable beneficiaries of an individual's testamentary instruments, we believe a further limitation generally should apply. Specifically, we hold a cause of action ordinarily will arise only when as a direct result of the lawyer's professional negligence the testator's intent as expressed in the testamentary instruments is frustrated in whole or in part and the beneficiary's interest in the estate is either lost, diminished, or unrealized. *See Hiemstra v. Huston,* 12 Cal.App.3d 1043, 1046–48, 91 Cal.Rptr. 269, 270–72 (1970); *Demaris v. Asti,* 426 So.2d 1153, 1154 (Fla.Dist.App. 1983); *Kirgan v. Parks,* 60 Md.App. 1, 12–13, 478 A.2d 713, 718–19 (Md.Spec.App. 1984). *But see Stowe,* 184 Conn. at 201, 441 A.2d at 84 (allowing disappointed beneficiary to maintain a cause of action even though the will was valid and the testamentary intent therein expressed fully carried out).

■ If the testator's intent, as expressed in the testamentary instruments, is fully implemented, no further challenge will be allowed. Thus, a beneficiary who is simply disappointed with what he or she received from the estate will have no cause of action against the testator's lawyer. This limitation, which protects the integrity and solemnity of an individual's testamentary instruments as well as the testator's express intent, will not apply if the lawyer concedes negligence. *See Kirgan,* 60 Md.App. at 12, 478 A.2d at 720.

■ II. Considering the allegations in Schreiner's petition in their most favorable light, Eickholt's will and codicil expressly included Schreiner as a direct and intended beneficiary of her estate. Eickholt's will devised to Schreiner an interest in a particular piece of real estate and named Schreiner as a residuary beneficiary. Eickholt's codicil specifically ratified her intent to leave him one-half of her interest in the property while removing him as a residuary beneficiary.

Both before and after June 28, 1981, the date Eickholt specifically ratified her intent to leave Schreiner an interest in her property, Scoville actively represented Eickholt in another matter dealing directly with this property. That representation led to the partition sale that transformed Eickholt's interest in real property to one in personal property.

While being actively involved in all three transactions and being fully aware of Eickholt's intent to leave Schreiner an interest in the property, Scoville never told Eickholt what effect the sale would have on her testamentary intent or redrafted her codicil to insure Schreiner would receive a portion of the proceeds from the partition sale. As a result, Schreiner received nothing from Eickholt's estate.

We conclude Schreiner has alleged sufficient facts to avoid dismissal of his petition for failure to state a claim. In most cases separate transactions between lawyer and client will not be linked, nor should they be. No lawyer reasonably can be expected to keep track of the provisions in the wills of his or her clients, nor the effect on those instruments caused by changes in the clients' affairs. It follows that in most cases, the post-will disposition of property will give rise to no cause of action.

Here, however, the proof may show the three relevant transactions (will, codicil, and partition) were interrelated, were closely connected in time, dealt directly with a specific piece of property, and that Scoville represented Eickholt's interests in all three transactions. In these circumstances, we hold Schreiner's petition should not have been dismissed. We therefore reverse district court's judgment and remand for further proceedings.

REVERSED AND REMANDED.

All Justices concur except HARRIS, J., who concurs in the result.