Mariano **HUERTA–OROSCO,** Plaintiff,

v.

Joe **COSGROVE,** Defendant.

No. C12–4111–DEO.

United States District Court,
N.D. Iowa,
Western Division.

Oct. 30, 2013.

Mariano Huerta–Orosco, Safford, AZ, pro se.

Patrick Thomas Parry, Forker & Parry, Sioux City, IA, Thaddeus E. Cosgrove, Cosgrove Law Firm, Holstein, IA, for Defendant.

## ORDER

LEONARD T. STRAND, United States Magistrate Judge.

This case is before me on plaintiff's October 7, 2013, motion (Doc. No. 19) for leave to file a first amended complaint. Defendant has filed a resistance (Doc. No. 21). Neither party has requested oral argument and, in any event, I find that oral argument is not necessary. *See* N.D. Ia. L.R. 7(c). The motion is fully submitted.

### PROCEDURAL BACKGROUND

Plaintiff Mariano Huerta–Orosco commenced this action on December 18, 2012, by filing a *pro se* motion for leave to proceed *in forma pauperis*, along with a proposed complaint. Doc. Nos. 1 and 1–1. On January 22, 2013, I granted his motion and directed the Clerk to file the complaint. Doc. Nos. 2 and 3. After being served, defendant Joe Cosgrove[1] filed an answer (Doc. No. 10) on June 26, 2013.

In his complaint, Huerta–Orosco contends that he delivered $1,019,000.19 to Cosgrove, a licensed Iowa attorney, in November 2000. He further contends that the purpose of the transaction was for Cosgrove to deposit and hold the funds in his client trust account for Huerta–Orosco's benefit. He contends that he has requested the return of the funds but Cosgrove has failed to comply. He asserts claims for breach of trust and breach of fiduciary duty and seeks damages, injunctive relief and an accounting. Cosgrove, in his answer, denies all claims and raises affirmative defenses that include both laches and the statute of limitations.

On August 15, 2013, I entered a scheduling order and discovery plan (Doc. No. 17) that established, among other things, a deadline of October 19, 2013, for motions to amend the pleadings and to add parties. Trial is scheduled to begin September 22, 2014.

### THE PROPOSED AMENDED COMPLAINT

Huerta–Orosco filed his motion for leave to amend, along with the proposed first amended complaint (new complaint), on October 7, 2013. Doc. Nos. 19 and 19–3. The new complaint contains an expanded set of alleged facts, names five additional defendants and asserts eleven new legal theories. With regard to the facts, Huerta–Orosco claims that on October 31, 2000, he was "a non-English speaking undocumented illiterate Mexican National" and that he won the sum of $1,019,000.19 while gambling on a riverboat operated by proposed new defendant Riverboat Casino–Missouri, Inc. (Riverboat). He further contends he was concerned that he could not claim his winnings because of his immigration status and that he would be turned in for deportation if he attempted to do so.

---

1. Defendant's last name is misspelled as "Casgrove" rather than "Cosgrove" in the complaint. I will direct the Clerk to correct the spelling on the court's docket. All future filings in this case should reflect the correct spelling.

To resolve this dilemma, Huerta–Orosco allegedly sought the help of proposed new defendants Pamela Rosales and Randy Verbeski. While the new complaint does not describe Huerta–Orosco's relationship with them, he alleges that they agreed to help him claim the money and ultimately made the claim under Rosales' name. He alleges that Riverboat paid Rosales an advance of about $36,750, which she delivered to Huerta–Orosco.

Huerta–Orosco next alleges that at the direction of Rosales and Verbeski, he retained "Joe Cosgrove, aka Francis "Joe" Cosgrove, Frank Cosgrove and/or the Cosgrove Law Firm" to recover the remainder of the winnings through Rosales and Verbeski. He alleges that his immigration status and concerns about deportation were explained to "Cosgrove" and that "Cosgrove" agreed to assist.[2] He alleges that he paid Cosgrove an advance of $5000 and agreed to pay an additional $5000 when the funds were fully recovered.

Next, Huerta–Orosco alleges Cosgrove told him that upon recovery of the full amount, he would deposit the funds into his client trust account and would hold the funds in trust until Huerta–Orosco demanded them. He contends that Cosgrove drafted a document for that purpose but that Huerta–Orosco's name was excluded from the document due to his immigration status. He alleges being told that the agreement "was to recover the $1,000,000 for him three ways through Cosgrove, Rosales, and Verbeski which Cosgrove would deposit in [his] client-trust account in Defendant's name as Trustee for Plaintiff's benefit terminable at his will."

Huerta–Orosco next alleges that he was incarcerated on federal drug charges twenty days later but was not concerned about his winnings because he had entrusted them to Cosgrove, as his attorney. He claims that over the next five years, he made efforts to contact Cosgrove about the funds but that his calls were not accepted. He then alleges that he wrote to Cosgrove in 2006 about the funds and received letters from both Joe Cosgrove and Frank Cosgrove in which they denied any knowledge of the situation. After that, Huerta–Orosco alleges that he was transferred to another institution, causing him to lose contact information and documents concerning this matter. However, he alleges that he was able to write to Cosgrove again in 2010 to demand the return of his funds and that he filed this action after receiving no response.

The proposed new defendants include Frank Cosgrove, the Cosgrove Law Firm, Rosales, Verbeski and Riverboat. The new complaint proposes the following causes of action:

a. Conspiracy to steal

b. Fraudulent misrepresentation

c. Fraudulent nondisclosure

d. Conversion

e. Legal malpractice

f. Breach of trust

g. Breach of contract

h. Breach of fiduciary duty

i. Unjust enrichment

j. Breach of implied-in-fact contract

k. Breach of covenant of good faith and fair dealing

**2.** The new complaint sometimes refers to Joe Cosgrove, Frank Cosgrove and the Cosgrove Law Firm collectively as "Cosgrove." With regard to some allegations, this makes it impossible to determine which specific individual is alleged to have been involved in certain events. For the remainder of this ruling, I will refer individually to Joe Cosgrove or Frank Cosgrove when it is possible to so. I will use "Cosgrove" when the allegations do not identify the specific, alleged actor.

l. Constructive trust

m. Injunctive relief and accounting

Like the original complaint, the new complaint includes a jury demand.

### ARGUMENTS OF THE PARTIES

Huerta–Orosco notes that his motion for leave to amend, and thus to add parties, is timely. He states that the case is at an early stage and contends that he has not been dilatory in requesting an amendment. Indeed, he contends that he only recently obtained the true names and possible addresses of proposed defendants Rosales and Verbeski. He points out that he remains incarcerated (apparently in Arizona) and that this has made it difficult for him to gather information. Finally, he suggests that some or all of the proposed new defendants are necessary and/or indispensable to the resolution of his claims.

Joe Cosgrove, in resisting the motion, contends that Huerta–Orosco has provided no valid excuse for waiting nearly ten months to request an amendment that substantially changes the nature of this case. He also alleges that it would be unfairly prejudicial to allow the amendment. Among other things, he points out that one of the proposed new defendants, Frank Cosgrove, is one of his attorneys of record in this case. He argues that adding Frank Cosgrove as a defendant would not only cause prejudice, but also that the request to add Frank Cosgrove shows that Huerta–Orosco is acting in bad faith. Finally, Joe Cosgrove argues that the new complaint should be rejected on grounds of futility, as Huerta–Orosco's proposed claims are allegedly untimely under Iowa law.

### ANALYSIS

■ Huerta–Orosco's motion is timely. As such, he is not required to show good cause to allow the amendment under Rule 16(b), as would be the case if the motion was untimely. *See, e.g., Popoalii v. Correctional Medical Services,* 512 F.3d 488, 497 (8th Cir.2008). The motion is instead governed by the more-liberal standard set forth in Rule 15(a), which provides that leave to amend a pleading shall be freely given when justice so requires. Fed.R.Civ.P. 15(a). Even under this standard, however, a timely motion to amend may be denied on grounds of "undue delay, bad faith or dilatory motive on the part of the movant, . . . undue prejudice to the opposing party by virtue of allowance of the amendment, [and] futility of amendment." *See Bell v. Allstate Life Ins. Co.,* 160 F.3d 452, 454 (8th Cir.1998).

■ I reject Joe Cosgrove's arguments concerning undue delay, bad faith and unfair prejudice. Huerta–Orosco filed his motion to amend within the time allowed by this court's scheduling order. Given his status as an inmate incarcerated far from the locus of the alleged events, I cannot find that Huerta–Orosco acted with unreasonable delay in gathering the information upon which his proposed amendment is based. Nor do I find that he is acting in bad faith simply because one of the proposed new defendants is an attorney of record in this case. While the merits of the proposed claims remain to be seen, Huerta–Orosco has articulated a reason for suing Frank Cosgrove that is not, at least on its face, nonsensical. There is no basis for me to conclude, at this stage of the case, that Huerta–Orosco seeks to add Frank Cosgrove to this case solely for purposes of harassment or annoyance.

As for undue prejudice, I understand that having one of the attorneys of record named as a co-defendant will cause inconvenience. However, I note that Pat Parry, an experienced attorney affiliated with a different firm, is also counsel of record for Joe Cosgrove in this matter. I assume

Mr. Parry can continue to represent Joe Cosgrove if leave to amend is granted. Moreover, adding additional claims and parties to an existing case always causes some additional expense (and, usually, some delay as well). While I have no doubt that Joe Cosgrove will suffer adverse consequences if the new complaint is allowed, I do not find that these consequences will amount to *undue* prejudice.

■ The "futility" argument requires a more-detailed analysis. A proposed amendment is futile if it could not survive a Rule 12 motion to dismiss. *See, e.g., In re Senior Cottages of Am., LLC,* 482 F.3d 997, 1001 (8th Cir.2007); *Quality Refrigerated Services, Inc. v. City of Spencer,* 908 F.Supp. 1471, 1489 (N.D.Iowa 1995). Here, Joe Cosgrove correctly points out that the claims in this diversity case are subject to Iowa limitations law. *See, e.g., Paracelsus Healthcare Corp. v. Philips Med. Sys., Nederland, B.V.,* 384 F.3d 492, 495 (8th Cir.2004). In Count 8 of the new complaint, Huerta–Orosco alleges that he was party to a written contract with Cosgrove, Rosales and Verbeski and that the contract was formed on or about November 1, 2000. He further alleges that Cosgrove, Rosales and Verbeski have breached that written contract. If a written contract was formed, under Iowa law a claim for its breach would have to be brought within ten years. *See* Iowa Code § 614.1(5).

■ Iowa law imposes a five-year statute of limitations on claims based on unwritten contracts, injuries to property, fraud and other actions not otherwise specified. *See* Iowa Code § 614.1, subsections (4) and (5). Claims for legal malpractice, breach of fiduciary duty and other torts involving economic (rather than personal) injury are also subject to the five-year statute of limitations. *See, e.g., Harvey v. Leonard,* 268 N.W.2d 504, 515 (Iowa 1978) (claim for breach of fiduciary duty is subject to five-year statute of limitations); *Venard v. Winter,* 524 N.W.2d 163, 166 (Iowa 1994) (claim for legal malpractice is subject to five-year statute of limitations). Thus, it appears that all of the other counts set forth in the new complaint would be subject to a five-year limitations period.

Joe Cosgrove contends that all of the claims in the new complaint are time-barred. For that reason, he argues that the motion for leave to amend must be denied as futile. While I agree that the statute of limitations appears to provide a viable, and perhaps even formidable, defense, I do not agree that its application is so obvious at this stage of the case that the claims in the new complaint are futile. Indeed, there are potential factual issues concerning both the commencement of the limitations period and the statute of limitations defense that simply cannot be resolved in a ruling on a timely motion for leave to amend the complaint.

■ *Accrual.* A statute of limitations does not begin to run until a cause of action has accrued. *See* Iowa Code § 614.1 (actions may be brought within the specified number of years "after their causes accrue"). A cause of action does not accrue until "the aggrieved party has the right to institute and maintain a suit." *Diggan v. Cycle Sat, Inc.,* 576 N.W.2d 99, 102 (Iowa 1998). Of course, a party is not aggrieved, and thus has no right to sue, until wrongful conduct has occurred. *See, e.g., Brown v. Ellison,* 304 N.W.2d 197, 200 (Iowa 1981) (cause of action for breach of contract accrues when the contract is breached).

■ Moreover, under Iowa law certain tort claims (including claims for legal malpractice) are subject to the discovery rule, meaning the cause of action does not

accrue "until the date of discovery, or the date when, by the exercise of reasonable care, plaintiff should have discovered the wrongful act." *Millwright v. Romer,* 322 N.W.2d 30, 33 (Iowa 1982). In cases alleging legal malpractice, the discovery rule serves to protect the client's right to full and fair disclosure from his or her attorney. *Id.* at 34.

▋ Here, while Huerta–Orosco alleges that his relationship with Joe Cosgrove and the proposed new defendants commenced in November 2000, the statute of limitations did not automatically begin to run as of that time. The clock did not start until a breach occurred (with regard to contract-based claims) or when Huerta–Orosco should have discovered the allegedly-wrongful act (with regard to claims that are subject to the discovery rule). I note, for example, that Huerta–Orosco contends he demanded the termination of the alleged trust, and the return of his alleged funds, on December 23, *2010.* New complaint ¶¶ 17, 61.

▋ *Estoppel.* Iowa law recognizes that there are circumstances under which it would be unjust to allow a defendant to rely on the statute of limitations. *See, e.g., Christy v. Miulli,* 692 N.W.2d 694, 701–02 (Iowa 2005). In particular, the doctrine of fraudulent concealment estops a defendant from prevailing on a statute of limitations defense if: (1) the defendant has made a false representation or has concealed material facts; (2) the plaintiff lacks knowledge of the true facts; (3) the defendant intended the plaintiff to act upon such representations; and (4) the plaintiff did in fact rely upon such representations to his prejudice. *Id.* at 702. The party alleging fraudulent concealment must prove each of the elements by "a clear and convincing preponderance of the evidence." *Id.*

▋ Here, Huerta–Orosco makes some allegations that at least hint of an estoppel argument. For example, he alleges that both Joe Cosgrove and Frank Cosgrove wrote letters to him in 2006 denying any knowledge of the relevant circumstances and, according to Huerta–Orosco, "concealing the fraud." New complaint ¶¶ 15, 60. While I have serious doubts as to whether Huerta–Orosco can establish the facts necessary to raise an estoppel, this is not the appropriate procedural context for that issue to be resolved.

In short, Joe Cosgrove may very well be correct that all of Huerta–Orosco's claims are barred by the statute of limitations. However, at this stage of the case, given the limited information in the record, that outcome is not so apparent that all of the claims in the new complaint are futile. As such, I hold that Huerta–Orosco is entitled to file the new complaint. Joe Cosgrove and the new defendants will be free, at that point, to raise and litigate all available defenses.

### CONCLUSION

For the reasons set forth herein:

1. Plaintiff Mariano Huerta–Orosco's motion (Doc. No. 19) for leave to file a first amended complaint is **granted.** The Clerk shall detach the proposed first amended complaint (Doc. No. 19–3) from the motion and docket it as the first amended complaint in this case.

2. Because plaintiff has been granted *in forma pauperis* status, he is entitled to have the summons and first amended complaint served on the new defendants at no cost or expense to him. 28 U.S.C. § 1915(d). As such, the Clerk shall provide the United States Marshals Service (USMS) with a summons and a copy of the first amended complaint with regard to each of the five new defendants (Frank Cosgrove, Cosgrove Law Firm, Pamela

Rosales, Randy Verbeski and Riverboat Casino–Missouri, Inc.). The USMS shall then attempt to effect personal service on each new defendant at any location where said defendant may be found.

3. As discussed in footnote 1, *supra,* the Clerk shall amend the electronic docket for this case to correct the spelling of defendant Joe Cosgrove's last name. All future filings in this case shall reflect the correct spelling of Mr. Cosgrove's name.

**IT IS SO ORDERED.**