In the Matter of the Estate of RICHARD FLYNN.

Surrogate's Court, New York County, July 17, 1931.

*William F. Wund*, for the petitioner.

*Edmund S. Bergen*, special guardian.

O'BRIEN, S. This probate proceeding presents one more instance of (1) a notary public who was also a (2) bank employee acting in

effect as a lawyer in connection with the attempted execution of a will. This practice cannot be too strongly condemned, not only for the reason that it means an invasion of the legal profession, but for the fact that testators thereby run the risk of frustrating their own solemnly declared intentions and rendering worthless maturely considered plans for the disposition of estates whose creation may have been the fruit of lives of industry and self denial.

In the instant case, aside from the fact that the instrument was signed by the testator and bears the signature of two attesting witnesses, the statute was entirely disregarded. Matthew McManus, whose name is signed beneath a jurat immediately above the clause appointing the executor, testified that he was employed in the bank when the execution of the propounded paper took place. He partook as a notary public in the execution of a number of wills for various persons, some of whom he knew to be depositors in the bank. He does not recall the testator or the facts surrounding the execution of this particular instrument, but he testified that when called upon in such cases, he would make sure that the paper was not already signed by the testator and would then give him a pen and direct him to sign. He would thereupon notarize the paper, meaning thereby, presumably, that he would write out a jurat, swear the testator and sign his name as a notary public. His custom then was to bring the paper inside to the cages of two tellers and procure their signatures thereto, whereupon he would return the paper to the testator. The witness testified that he was certain that this procedure was observed in the execution of the propounded paper. The following excerpt from his testimony is eloquent: " Q. I show you this paper and ask you if this is any different from others that you signed? A. This is pretty crude. Most of them I have signed are drawn up a little more legibly. I just give it to him and ask him to sign wherever it is designated and he would give it back to me, and if there were witnesses required, I would take the paper, notarize it myself and bring it to two of the other tellers in my bank and ask them to sign it on my say-so and then ask them to witness it. I have done that hundreds of times. Q. Was it your custom to bring the testator along with you, or did you have it signed right then, or after he had departed? A. While he was waiting, I had to give this back to him. Q. He was not brought into contact with the witnesses? A. No. That's physically impossible." The attesting witnesses corroborated the notary to the extent that they frequently signed papers in the bank at the request of Matthew McManus and that whenever they acted as witnesses to wills they signed their names within their respective tellers' cages without ever having seen the testator in question.

Like the witness McManus they too have completely forgotten the occurrence. One of the witnesses, it is true, admitted, upon being pressed on the point, that he could not say that he did not see the testator, or that the testator did not personally publish the instrument to him nor request him to sign. But this admission is traceable to the fact that he has completely forgotten the occurrence. But attesting witnesses are certain, on the other hand, that they signed numerous instruments and that they signed within their tellers' cages at the request of the notary and without ever having seen the testator.

The fact that the language of the propounded paper expresses deep solicitude and touching paternal affection on the part of the testator for his four sons, furnishes no justification for overlooking his utter failure to comply with the requirements of the statute. The incident, however, furnishes an example of the futility of avoiding the benefit of competent legal advice in connection with the disposition of one's estate. I am satisfied that there was not a substantial compliance with the requirements of the statute in the execution of the propounded paper and probate must, therefore, be denied. Submit decree accordingly.