Matthew E. PERSCHE, Executor of the Estate of Ernest A. Persche, Also Known as Ernest Persche, Deceased; and Matthew E. Persche, Individually; and Erna Persche, Individually, Plaintiffs and Appellees,

v.

Arthur W. JONES, Individually, and the Tri-State National Bank, Defendants and Appellants.

No. 14993.

Supreme Court of South Dakota.

Argued Feb. 10, 1986.

Decided April 30, 1986.

Joseph M. Butler of Bangs, McCullen, Butler, Foye & Simmons, Rapid City, for plaintiffs and appellees.

Thomas W. Stanton of Costello, Porter, Hill, Nelson, Heisterkamp & Bushnell, Rapid City, for defendants and appellants.

HENDERSON, Justice.

### ACTION/PARTIES

This is an appeal from a Judgment entered on a jury verdict awarding plaintiffs-appellees $125,000 damages resulting from defendants-appellants' unauthorized practice of law. We affirm.

Ernest Persche (Ernie) was a Butte County rancher who died October 15, 1981. Matthew Persche (Matt) and Erna Persche (Erna) are Ernie's children and plaintiffs-appellees herein. Defendants-appellants are Arthur W. Jones (Jones) and the Tri-State National Bank (Bank). The Bank is located in Belle Fourche and Jones was its president and loan officer. Jones was also Ernie's long-time friend and financial advisor. Betty Craft Persche (Betty) was Ernie's friend, live-in housekeeper, and purported wife.

### FACTS

In October 1978, Betty began working as Ernie's live-in housekeeper and this arrangement continued until the Fall of 1980 when Betty moved to Montana. Thereafter, Ernie fell ill and on November 19, 1980, Ernie executed a will drawn by Attorney Ken Graves. This will appointed Matt and Attorney Graves co-executors and gave the bulk of Ernie's estate to Matt and Erna. No provision for Betty was contained in this will.

In December 1980, Ernie visited Jones at the Bank. Ernie was upset about his will and he insisted that Jones help him revise it—help him change it, so that the will was the way he wanted it. Ernie told Jones the changes he wanted to make and Jones had a Bank secretary type a new will. This second will was signed by Ernie on December 16, 1980, in the Bank, and witnessed by two Bank secretaries. This second will made changes in specific bequests and appointed Jones as executor of Ernie's estate. The propriety of the second will's attestation, however, is highly suspect for it is uncertain whether all parties signed in the presence of each other.

On February 16, 1981, Ernie was again at the Bank requesting changes in this second will. It appears Ernie wanted to add another specific bequest. Jones then had a Bank secretary type this bequest onto the will, cross out the December 1980 date, and type in February 1981. Ernie, Jones, and the two secretary-witnesses then initialed these changes.

In March 1981, Betty returned as Ernie's live-in housekeeper. On April 28, 1981, Ernie had Attorney Leroy Hill draw a codicil to the second will. This codicil gave Betty a life estate in Ernie's ranch house and provided her a specific bequest of $10,000. This codicil was duly executed in Attorney Hill's office. At this time, Ernie told Attorney Hill that Jones had drawn the will to which the codicil pertained and Attorney Hill explained why it was wrong to have a banker draw a will.

On June 1, 1981, Ernie and Betty were purportedly married. Prior to this marriage, however, Ernie and Betty executed an antenuptial agreement which limited Betty's rights to $2,500 from Ernie's estate. This marriage, however, was void because Betty, although previously married four times, had never obtained a formal divorce from her first husband. Thus, under SDCL 25–1–8, the marriage of Ernie and Betty was void. Betty's first marriage was formally dissolved some two or three years after Ernie's death.

In August 1981, Ernie left a copy of his second will with Jones at the Bank. On this copy Ernie had made several handwritten changes. On August 31, 1981, Ernie was in a Belle Fourche hospital. On this date, Ernie contacted Attorney Hill and requested him to come to the hospital so as to construct a new testamentary instrument. Attorney Hill went to the hospital but after seeing Ernie's condition, Attorney Hill determined that Ernie was unable to attend to the requested business. On this same date, and apparently after Attorney Hill's visit, Ernie called Jones at the Bank and requested that a will incorporating his changes be typed up. Jones told Ernie that this had to stop, but Jones had a Bank secretary type a third will. This third will eliminated Betty's life estate, reduced the $10,000 bequest to Betty to $5,000, and divided the bulk of the estate between Matt and Erna. On the same date, August 31, 1981, Jones took this third will to the hospital. While Jones was out of the room, Ernie signed it. Jones then took the third will back to the Bank and asked the two previous secretary-witnesses if they recognized Ernie's signature and would witness his signature. Both secretaries recognized Ernie's signature and both signed the third will, at the Bank, as witnesses, but outside the presence of each other and outside the presence of Ernie who was still at the hospital. On October 15, 1981, Ernie died at his ranch near Belle Fourche.

Jones offered the third will of August 31, 1981, for probate but Betty objected to its admission. The circuit court determined that the third will was not properly exe-cuted. Probate was refused. Matt thereafter offered the first will of November 19, 1980, for probate. Betty objected to probate of this first will. She filed a Petition for Elective Share of Surviving Spouse and a Petition to Set Apart Exempt Personal Property and for Family Allowances.

On January 6, 1983, Matt and Betty executed a Stipulation for Settlement wherein Betty agreed not to contest probate and to release Ernie's estate from all claims and demands. In return, Betty was to receive $50,000 from Ernie's estate; the first $50,000 recovered from a suit against Jones and the Bank to be brought by Ernie's estate; the payment of some $13,000 in debts; and all furniture, appliances, and household goods located in Ernie's ranch residence.

Suit was thereafter brought against Jones and the Bank by the Estate seeking to recover damages allegedly resulting from their negligence and unauthorized practice of law. After a jury trial on the merits, a verdict was returned awarding Matt and Erna $125,000. Thereupon, the trial court entered judgment.

From the whole of this Judgment, Jones and the Bank now appeal asserting some nine issues and subissues for our determination. We group these issues into three categories and address their merits seriatim.

## LIABILITY

Jones and the Bank make various assertions relating to nonliability. The first such contention is that this action is not maintainable because a duty was not owed to the beneficiaries of Ernie's third will as no privity existed between the beneficiaries with Jones and the Bank. Numerous courts, however, under third party and/or tort theories, have upheld beneficiary actions against the attorney responsible for drafting or supervising the execution of a defective testamentary instrument, *see Lucas v. Hamm*, 56 Cal.2d 583, 364 P.2d 685, 15 Cal.Rptr. 821 (1961), *cert. denied*, 368 U.S. 987, 82 S.Ct. 603, 7

L.Ed.2d 525 (1962); *Licata v. Spector,* 26 Conn.Supp. 378, 225 A.2d 28 (1966); *Needham v. Hamilton,* 459 A.2d 1060 (D.C.App. 1983); *Lorraine v. Grover, Ciment, Weinstein & Stauber, P.A.,* 467 So.2d 315 (Fla. App.1985); *Ogle v. Fuiten,* 102 Ill.2d 356, 80 Ill.Dec. 772, 466 N.E.2d 224 (1984); *Woodfork v. Sanders,* 248 So.2d 419 (La. App.1971), *writ denied,* 259 La. 759, 252 So.2d 455 (1971); *Guy v. Liederbach,* 501 Pa. 47, 459 A.2d 744 (1983); *Auric v. Continental Cas. Co.,* 111 Wis.2d 507, 331 N.W.2d 325 (1983); and in *Biakanja v. Irving,* 49 Cal.2d 647, 320 P.2d 16, 65 A.L. R.2d 1358 (1958), a duty was found to exist and a beneficiary action was upheld when a layman negligently failed to have a will properly attested. The reasoning of *Biakanja* for upholding the beneficiary's action despite an absence of privity is persuasive.[1] Based thereon, and under the facts and circumstances of this case, we determine that Jones and the Bank owed a duty to Matt and Erna. Therefore, Matt and Erna can properly maintain this action. One who negligently fails to direct proper attestation of a will becomes liable in tort to an intended beneficiary who suffered damage because of the invalidity of the testamentary instrument. *Biakanja; Heyer v. Flaig,* 70 Cal.2d 223, 226, 449 P.2d 161, 163, 74 Cal.Rptr. 225, 227 (1969).

■ Jones and the Bank next contend the evidence fails to reveal that they supervised the signing and witnessing of Ernie's third will; moreover, that mere supervision of a will's execution does not constitute the unauthorized practice of law. After examining the record and pertinent law, however, we are unable to concur in these contentions.

"Supervise" is defined in *Black's Law Dictionary* 1290 (5th ed. 1979), as: "To have general oversight over, to superintend or to inspect." In the present case, the record reveals that Ernie went to Jones at the Bank on three separate occasions to have his will changed, that Jones directed a Bank secretary to type the changes and two Bank secretaries were directed to sign the wills as witnesses. The record further reveals that on August 31, 1981, Ernie requested changes in his will, that Jones had a Bank secretary type a new will, that Jones delivered this third will to Ernie at the hospital for his signature, and that Jones thereafter directed two Bank secretaries to sign as witnesses. The trial court instructed the jury that Jones supervised the signing and witnessing of Ernie's August 1981 will.[2] Based on the record, we find no error with such an instruction. Not only did Jones violate this licensure statute, he failed to exercise a degree of care in the will's execution. SDCL 16–18–1 provides that no person shall engage in the practice of law unless duly licensed as an attorney at law and an active member of the state bar. The evidence clearly shows that Jones had general oversight and direction over the signing and witnessing of Ernie's third will.

■ As for the contention that a mere supervision of the execution of a will does not constitute an unauthorized practice of law, we also disagree. Practicing law "is not limited to conducting litigation, but includes giving legal advice and counsel, and

---

1. When a will is constructed and solemnized, the transaction is intended to affect the beneficiaries. It is foreseeable that defective attestation will result in harm to the beneficiaries and the connection between the defendants' conduct and the injury suffered is close. The defendants' conduct is not only negligent, but highly improper, and such conduct should be discouraged and not protected by immunity from civil liability. *Biakanja,* 320 P.2d at 19.

2. Jury Instruction No. 5 reads:
   You are instructed that the laws of the state of South Dakota make it unlawful for a person to engage in the practice of law who is not educated in the law and licensed to practice law in the state of South Dakota.
   In this case, the evidence is undisputed that the defendant Art Jones undertook to supervise the signing and witnessing of a will for Ernest Persche on August 31, 1981. In so doing, the defendant Jones violated the laws of the state of South Dakota and, therefore, is liable to each of the plaintiffs for all damages proximately caused by this violation of the law.

rendering services that require the use of legal knowledge or skill and the preparing of instruments and contracts by which legal rights are secured, whether or not the matter is pending in a court." Annot., 22 A.L.R.3d 1112, § 2, at 1114 (1968). Thus, "drafting and supervising the execution of wills for others is clearly practicing law...." 7 Am.Jur.2d *Attorneys at Law* § 104, at 176 (1980). It was determined in *Matter of Flynn's Estate*, 142 Misc. 7, 253 N.Y.S. 638 (1931), that a bank employee's supervision of a will's execution was an invasion of the legal profession and we determine that the activities complained of in this case constitute the unauthorized practice of law. The execution of a will requires the use of legal knowledge and skill and the implementation of statutes so as to assure proper execution and attestation. Law books are replete with cases where maturely considered plans for the disposition of estates, whose creation were the fruit of lives of industry and self-denial, were destroyed because of technical errors during execution and attestation. *Flynn*, 253 N.Y.S. at 639. Here, action was taken on Ernie's behalf which was totally unrelated to banking business. Holding that there was no error with the instruction concerning Jones' unauthorized practice of law, Jones is thus liable for damages proximately caused thereby. Proximate cause is a requisite to establishing damage by the plaintiff. There were sufficient facts to create an issue of proximate cause and the jury determined this favorably for Matt and Erna. Jury Instruction No. 16 explicitly set forth the manner in which the jury should determine what constituted proximate cause.

■ Appellants thirdly contend the trial court improperly denied testimony concerning Betty's homestead rights, elective share rights, a "contract to make a will" claim, and the valuation thereof if valid. On appeal, Jones and the Bank contend this testimony was improperly excluded as it pertained to proximate cause and damages. Betty's marriage to Ernie, however, was void, as her marriage to her first husband was never dissolved. SDCL 25–1–8. Thus, the trial court did not abuse its discretion on an evidentiary ruling via the exclusion of such testimony. Furthermore, it would create tangential spinouts triggering confusion for the jury. As for testimony regarding a "contract to make a will" claim, the record reveals that no such claim was ever asserted by Betty and we conclude its denial was not erroneous.

■ A final advocacy for nonliability centers around Ernie being admonished that a lawyer should attend to changes in his will, and that Ernie, despite these admonishments, continued to seek Jones' assistance when making will changes. Based on these facts, Jones and the Bank contend the jury should have been instructed on contributory negligence and assumption of risk. We disagree for two reasons.

First, Ernie's behavior, as revealed by the facts, did not constitute the breach of a duty to protect his own safety nor the voluntary assumption of a known or apparent danger. *Starnes v. Stofferahn*, 83 S.D. 424, 160 N.W.2d 421 (1968); *Underberg v. Cain*, 348 N.W.2d 145 (S.D.1984). Thus, Ernie was not contributorily negligent and he did not assume a risk. Second, the duty owed to Matt and Erna, his children, was separate and distinct from the duty owed to Ernie. *Heyer*, 449 P.2d 161. Ernie's contributory negligence or assumption of risk cannot be imputed to Matt or Erna to thereby abrogate the violation of the duty owed to them.

### PROCEDURAL ERRORS

■ Jones and the Bank raise two issues we categorize as alleged procedural errors. The first claimed error pertains to the absence of Betty as a party plaintiff. Under the terms of the Stipulation for Settlement, Betty would receive the first $50,000 recovered in a suit against Jones and the Bank. Based on this fact, Jones and the Bank filed a motion to dismiss for failure to name Betty as a party plaintiff. This motion was denied. The trial court's denial is claimed to be error, but we disagree.

SDCL 15–6–17(a) states in part: "Every action shall be prosecuted in the name of the real party in interest." In interpreting the mandate of this statute, this Court has stated that the statutory "requirement is met if the one who brings the suit has a real, actual, material, or substantial interest in the subject matter of the action." *Vander Vorste v. Northwestern Nat'l Bank*, 81 S.D. 566, 572, 138 N.W.2d 411, 414, 20 A.L.R.3d 960, 965 (1965).

Here, the parties bringing the suit are the executor and children of Ernie Persche, to wit, Matt and Erna Persche, the intended beneficiaries of Ernie's defectively executed third will. Without question, they have a definite and substantial interest in the subject matter of this action and it is the violation of the duty owed directly to them which permits their bringing of this suit. Indeed, it is the intended beneficiaries of the defective testamentary instrument that must bring the suit, for it is their interests that were defeated. *Heyer.* We therefore hold the statutory requirement of SDCL 15–6–17(a) is met. Betty was not an indispensable nor a proper party to this action. The motion to dismiss was properly denied.

■ A second alleged procedural error advanced is the addition of Matt and Erna as individual party plaintiffs. This suit was originally brought in the name of Matt as executor of Ernie's estate. A motion was then filed to amend the complaint for the express purpose of including a claim for punitive damages. This amended complaint, however, also added Matt and Erna as individual plaintiffs, but a motion to add party plaintiffs was never filed. Jones and the Bank moved to strike Matt and Erna as individual plaintiffs, but the trial court denied the motion. Although we do not condone the civil procedure by which Matt and Erna were originally added as individual plaintiffs, we cannot substantively conclude that the trial court erred in denying the motion to strike. Matt and Erna are the only correct plaintiffs to bring this action. They are the real parties in interest, it was their interests which were de-

feated by the defective third will, and it is they, as beneficiaries of the defective instrument, who must bring this action, for the executor cannot normally bring an action such as this. *Heyer; Guy*, 459 A.2d 744. Thus, Matt and Erna were necessary and indispensable parties and the only persons with standing to prosecute this case. Additionally, the record reveals no prejudice to Jones and the Bank. The trial court did rule on their motion to strike. Appellants did have a meaningful opportunity to be heard and fully argued this aspect of the case. Thus, appellants were not taken advantage of by initial faulty civil procedure and their substantive advocacy was ruled upon. We affirm the trial court's denial of the motion to strike.

## DAMAGES

■ Jones and the Bank contend the $125,000 verdict awarded by the jury to Matt and Erna is clearly excessive and either contrary to the evidence or the result of passion and prejudice. We disagree.

The measure of damages cannot be left to the mere speculation of the jury, for the evidence must show facts which afford a basis for measuring the loss with reasonable certainty. *Drier v. Perfection, Inc.*, 259 N.W.2d 496, 506 (S.D.1977). In the case at bar, the evidence reveals that if Ernie's third will was valid, Betty would have received a bequest of $5,000. Instead, because of the third will's invalidity, Ernie's second will and the codicil thereto were valid and Betty received a life estate in Ernie's ranch house and a $10,000 bequest. This life estate, however, was relinquished when Betty and Matt entered the Stipulation for Settlement. At trial, Matt, as then owner of the ranch property, valued Betty's life estate at $100,000. The owner of property is qualified to express his or her opinion as to its value, and the weight to be accorded such testimony is for the trier of fact. *See Gross v. Connecticut Mut. Life Ins. Co.*, 361 N.W.2d 259, 271 (S.D.1985); *Fredrick v. Dreyer*, 257 N.W.2d 835, 840 (S.D.1977); and *Hannahs v. Noah*, 83 S.D. 296, 301–02, 158 N.W.2d

678, 681 (1968). Under the settlement, Betty received $50,000 and would receive the first $50,000 recovered in this suit. Additionally, some $13,000 in debts were paid; Betty received all furniture, appliances, and household goods located at the ranch house; and some $10,000 plus in legal fees were incurred in getting Betty to relinquish or settle her interests. This evidence afforded a basis for measuring Matt and Erna's loss with reasonable certainty. The amount awarded was within the realm of the evidence and not manifestly actuated by passion or prejudice. *Weidner v. Lineback*, 82 S.D. 8, 20, 140 N.W.2d 597, 603 (1966). The award is not excessive, contrary to the evidence, or the result of passion or prejudice.

The Judgment appealed from is accordingly affirmed.

FOSHEIM, C.J., MORGAN and WUEST, JJ., and HERTZ, Circuit Judge, Acting as Supreme Court Justice, concur.

SABERS, J., not having been a member of the Court at the time this action was submitted to the Court, did not participate.